THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAHMOUD "MIKE" MOHAMMED ALZOUBI, Defendant-Appellant.

Third District    No. 3—84—0154

Opinion filed June 14, 1985.—Rehearing denied July 15, 1985.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Mike Alzoubi was acquitted of rape but convicted of indecent liberties with a child following a jury trial in Peoria County

circuit court, for which he was sentenced to four years' imprisonment. On appeal, he contends (1) that it was error to admit certain expert testimony concerning blood tests and probability of paternity and (2) that it was error to admit certain other evidence. We affirm the conviction.

According to the testimony adduced at trial, defendant and his wife Darla were living in a one-bedroom apartment in Peoria during August of 1982 when his wife's family arrived for a short visit. Brenda Knight, Darla's half-sister, was 12 years old at the time. Brenda's mother, stepfather, grandmother, and sister Rhonda all slept in the bedroom, while Brenda slept on a sleeping bag on the living room floor near defendant and Darla. Sometime during the night of Saturday, August 28, according to Brenda, defendant woke her by placing his hand over her mouth and pressing an elbow against her chest to hold her down. He pulled her shorts down, and proceeded to have intercourse with her against her will. She stated that she did not call out because she was afraid he would hit her or kill her even though defendant's wife was sleeping about three feet away and the rest of the family was in the next room. The State also produced evidence indicating that Brenda told her sister Rhonda about the incident some three or four days later, but she did not tell her parents until it was discovered that she was pregnant in December of 1982. She delivered a daughter on May 4, 1983.

The State called an expert witness, who testified in some detail to blood tests performed upon Brenda, her baby daughter, and defendant. In addition to the familiar ABO blood types, the blood was also tested for HLA characteristics. According to Dr. James Geyer, director of the bloodtesting laboratory, the combination of blood types found in both defendant and the child is one of the rarest HLA combinations among Caucasian males in this country. Dr. Geyer stated that defendant could not be excluded as the father of the child, and if defendant had access to the victim, and if he was fertile, the probability of paternity was 99.7%. Dr. Geyer explained the probability in other terms, as well, stating that only six men out of 1,000 in a random group of Caucasian males would have such a combination and that defendant would be 335 times more likely to be the biological father than a man picked at random from all North American males.

On cross-examination Dr. Geyer testified that the test results cannot identify the father of the child but can only give an indication of the rarity of blood groups, and that the test would exclude 99.7 out of 100 falsely accused men. Dr. Geyer admitted that he had

no probability statistics concerning men of Arabian nationality, even though defendant was an Arab, born in Jordan. The probabilities given were based on Caucasians in North America (.65%) and on the total world population (.3%).

As aforesaid, the defendant was charged with both rape and with indecent liberties with a child. As charged, both offenses required a finding that defendant had sexual intercourse with Brenda. To prove rape, it was necessary to prove that intercourse was by force and against her will, while the indecent liberties charge required proof only that sexual intercourse occurred and that Brenda was under the age of 16 years. The jury found defendant guilty of indecent liberties with a child and innocent of rape. After a sentencing hearing, the trial court sentenced defendant to four years in prison and ordered him to pay restitution of $1,533.50 to the victim.

■ The primary issue presented by this appeal is whether the trial court erred in admitting evidence concerning the mathematical probabilities of defendant's paternity of Brenda's child. The question of paternity is relevant, in spite of the rape acquittal, since the indecent liberties conviction was necessarily based upon a finding that defendant did have sexual intercourse with Brenda Knight, as charged.

Defendant relies primarily upon the recent case of *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734, where a murder conviction was reversed, because, *inter alia*, of the admission of statistical probabilities. After testing the characteristics of blood taken from the defendant, the victim and the scene of the homicide, the witness in *Harbold* stated that the probability of an accidental match was less than one in 500. The reviewing court held that the blood test analysis evidence was admissible but that the testimony to the statistical probability of matching blood was error. In its opinion, the court discussed extensively the foundational problems of the evidence in that case, reviewed some cases from other jurisdictions, and finally concluded that testimony as to statistical probabilities "encouraged the jury to disregard evidential risks traditionally weighed in determining guilt or innocence, and focused unfairly upon a numerical conclusion." (124 Ill. App. 3d 363, 383, 464 N.E.2d 734, 749.) Because *Harbold* involved a close circumstantial case, the court held that it could not say this improper testimony did not affect the jury's deliberations. This error, along with three other errors, was held to warrant a reversal and remand for a new trial.

We note several points of distinction between *Harbold* and the

case before us. First and foremost, in *Harbold* there was no other evidence to connect the defendant to the crime except for the blood characteristic match, while, in the case before us, the blood characteristics merely corroborate Brenda's unequivocal identification of defendant as the man who had intercourse with her on the night of August 28, 1982, 8½ months prior to the delivery of her baby. Second, we think it significant that the expert witness in this case testified several times that the probability statistics would apply only if defendant had access to the mother and if he were fertile on the date in question, that the test results could not name the father, that there remained a doubt as to this defendant, and that the blood tests merely indicate that defendant cannot be excluded. We believe it was made clear that the overwhelming statistical probabilities did not determine the question of whether defendant was guilty beyond a reasonable doubt.

Expert testimony of mathematical probabilities that a certain combination of events will occur simultaneously has been held not admissible when based on estimations rather than on established facts. (See *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734; *People v. Collins* (1968), 68 Cal. 2d 319, 66 Cal. Rptr. 497, 438 P.2d 33; see also Annot., 36 A.L.R.3d 1194.) However, population percentages as to the possession of certain combinations of blood characteristics, based upon established facts, are admissible as relevant to identification and are reasonably within the expertise of an expert witness testifying to blood-test analysis. (*People v. Gillespie* (1974), 24 Ill. App. 3d 567, 321 N.E.2d 398; *State v. Washington* (1981), 229 Kan. 47, 622 P.2d 986.) In *People v. Gillespie*, the appellate court considered defendant's argument about the lack of relevancy, stating:

> "Obviously, the frequency of certain blood types among the segments of the population is not a matter of common knowledge, but is within the peculiar knowledge of an expert. Whether the blood left at the scene of the burglary is found to be in a relatively smaller or larger segment of the population is germane to the issue of identification. Thus, the statistics testified to are relevant to prove the guilt of the defendant, and may be considered along with the other circumstances of the case." (*People v. Gillespie* (1974), 24 Ill. App. 3d 567, 575-76, 321 N.E.2d 398, 404. Accord, *People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514.

■ Here the probability testimony of the expert witness was not challenged either on appeal or in the trial court on the ground

that it was not authoritative or for improper foundation but solely on the ground that its prejudice outweighed its probative value. The trial court concluded that the evidence was relevant and properly admitted. Considering the totality of the evidence adduced at trial, we cannot say that the trial court erred in so ruling.

■ On appeal, defendant also argues that HLA blood typing is not scientifically reliable. That issue was not raised in the trial court and hence was waived and may not be considered for the first time on appeal. Parenthetically, we note that the expert witness testified that HLA testing is used by the medical profession for determining the compatibility of donor and recipient in organ transplant surgery, and also that the Illinois General Assembly has authorized the use of HLA blood testing in paternity cases. (Ill. Rev. Stat. 1983, ch. 40, par. 1401.) Certainly we cannot say that such tests are so unreliable that their use constitutes plain error.

■ The final error asserted by defendant concerns the testimony relating a statement that defendant had raped her, made by Brenda to her sister Rhonda three or four days after the August 28 incident. Defendant argues that it was error to permit a corroborative complaint of rape where the testimony included the name of the accused and where the complaint was made with inconsistent or unexplained delay. Defendant relies upon *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, and similar cases as authority for his claim of error here. However, defendant did not include this issue in his post-trial motion; the issue is therefore waived for purposes of appeal. (*People v. Bainter* (1981), 102 Ill. App. 3d 1029, 430 N.E.2d 721.) Furthermore, defendant's acquittal on the rape charge probably renders this issue moot.

Alzoubi's conviction for indecent liberties and his sentence are affirmed.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.