THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARNELL GENERALLY, Defendant-Appellant.

Fifth District No. 5—86—0239

Opinion filed May 18, 1988.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Garnell Generally, was convicted by a jury of murder and robbery and sentenced by the circuit court of Madison County to natural life on the murder conviction and seven years on the robbery, to be served concurrently. Defendant appeals his convictions and sentence. We affirm.

On August 17, 1985, defendant, Almondo "Monte" McGowan (defendant's cousin), Joseph Ewing and Marsha Smith (one of defendant's girlfriends) were riding around in defendant's car, drinking beer and smoking marijuana. Defendant decided he wanted to rob someone, so they drove to Rock Springs Park in Alton, Illinois, in defendant's car. At the park, they stopped next to a car occupied by the victim, Harold Wayne Staton. Defendant and McGowan got out of defendant's car, approached the victim and began talking with him. They then got in the victim's car, defendant in the front seat on the passenger side and McGowan in the back. Defendant instructed the victim to start his car and told Ewing to follow in defendant's car. As they were leaving the park, defendant started threatening the victim. Defendant looked in the glove compartment and asked the victim if he had any money. The victim denied having any, but defendant found $3 and a checkbook. McGowan testified he did not know what happened to the $3 after that. Defendant then ordered the victim to change places with him or he would beat him up. Ewing saw defendant strike the victim, get out of the car and reenter on the driver's side. Defendant began driving the victim's car so fast that Ewing was having trouble following. Defendant eventually stopped to allow Ewing and McGowan to switch positions. Defendant continued to drive fast after the switch but stayed on a road toward his house. Defendant finally stopped the car and ordered the victim to get out. Defendant then instructed the victim to get on one knee in front of his own car. At this point, defendant, Ewing and McGowan began beating the victim. Once the victim was "down" and begging for mercy, Ewing and McGowan returned to defendant's car and got in the backseat. Defendant, however, ordered the victim to lie in a ditch next to the road and proceeded to remove a jack from the trunk of his car. He went back to the victim and hit him two or three times with the jack. Defendant returned to his car, put the jack in the backseat and drove off, announcing the victim was dead. Defendant dropped the jack into a trash dumpster and drove the others home.

The victim was found the next day by passing motorists. An autopsy revealed that the victim's death was caused by multiple blows to the head of sufficient strength to shatter the human skull. Mark-

ings and lacerations on the victim's body and head were consistent with having been inflicted by a car jack. Tests performed on bloodstains found on the clothing defendant allegedly wore on the day of the crime eliminated defendant as the source of the stains but indicated that they could have come from the victim.

The jury found defendant guilty of murder and robbery. Because the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, the trial court sentenced defendant to natural life plus seven years for the robbery conviction, to be served concurrently. Defendant appeals, raising seven issues for review.

■■ Defendant first argues he was not proved guilty of robbery beyond a reasonable doubt because no evidence was presented that he took money from the presence of the victim by use of force. We disagree. The offense of robbery is complete when force or the threat of force causes a victim to part with the possession of property against his will. (*E.g., People v. Gaines* (1981), 88 Ill. 2d 342, 367, 430 N.E.2d 1046, 1058-59, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285; *People v. Robinson* (1981), 92 Ill. App. 3d 397, 398, 416 N.E.2d 65, 66.) The requirement that the taking must be by use of, or threats of, force is satisfied if the fear of the victim was "of such nature as in reason and common experience *** likely to induce a person to part with his property for the sake of his person." (*People v. Hollingsworth* (1983), 120 Ill. App. 3d 177, 178-79, 457 N.E.2d 1062, 1064; *People v. Whitley* (1974), 18 Ill. App. 3d 995, 999, 311 N.E.2d 282, 286. See also *People v. Hale* (1980), 80 Ill. App. 3d 63, 65, 399 N.E.2d 343, 345.) Whether or not such force or threats of force were used to deprive the victim of his property is an issue of fact for the jury to decide, a decision which we will not disturb unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Valentino* (1985), 131 Ill. App. 3d 257, 262, 475 N.E.2d 627, 632.) Such is not the case in this instance.

■ According to the testimony of McGowan and Ewing, defendant decided he needed money and wanted to rob someone before entering the park and approaching the victim. Once in the victim's car and after ordering him to leave the park, defendant asked if he had any money and began rummaging through the glove compartment. Defendant found $3. McGowan testified he did not see defendant take the money, but obviously that is what he did. Surely defendant did not leave the money there when his purpose for approaching the victim in the first place was to rob him. No money was found in the victim's car the following day when police searched it. Such evidence, albeit

circumstantial, clearly supports the jury's verdict. See *Whitley*, 18 Ill. App. 3d at 999, 311 N.E.2d at 285. *Cf. People v. Taylor* (1984), 101 Ill. 2d 508, 514-15, 463 N.E.2d 705, 709, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209 (insufficient proof victim had personal property in possession immediately before incident).

Ewing and McGowan's testimony also demonstrates the taking was accomplished by force or by the threat of imminent use of force. Once in the car, defendant began threatening the victim. The fact the victim did everything defendant told him to do compels the conclusion that the victim was in fear of defendant and that the free exercise of his will had been suspended. (See *Whitley*, 18 Ill. App. 3d at 999, 311 N.E.2d at 286.) McGowan testified defendant searched the glove compartment immediately prior to ordering the victim to let him drive. Ewing testified he saw defendant strike the victim prior to defendant's changing positions in the car with the victim. The jury reasonably could have inferred that defendant struck the victim while looking for or taking the victim's money. Moreover, defendant quite clearly employed force in killing the victim to effectuate his escape. The offense of robbery still may be committed even though the initial taking is accomplished without force if the departure is accomplished by use of force. (See *People v. Ditto* (1981), 98 Ill. App. 3d 36, 38, 424 N.E.2d 3, 5.) Based on the record before us, defendant was proved guilty of robbery beyond a reasonable doubt.

■ Defendant argues, however, his conviction is based solely on the testimony of unreliable witnesses, in other words, his accomplices, who necessarily had feelings of malice toward him or hopes of leniency from the State should their testimony be viewed favorably. Suffice it to say it is for the trier of fact to determine witnesses' credibility and the weight to be given their testimony. (*E.g., People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267, 276-77, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267; *People v. Kubat* (1983), 94 Ill. 2d 437, 467-68, 447 N.E.2d 247, 260, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 174, 104 S. Ct. 199; *People v. West* (1977), 54 Ill. App. 3d 903, 906, 370 N.E.2d 265, 268.) The jury was fully cognizant of infirmities and inconsistencies in the accomplices' testimony and was aware of possible biases when making a determination of defendant's guilt. Moreover, the accomplices' testimony was not completely uncorroborated. (See *West*, 54 Ill. App. 3d at 906-08, 370 N.E.2d at 268-69. *Cf. People v. Newell* (1984), 103 Ill. 2d 465, 471, 469 N.E.2d 1375, 1378.) We see no reason to overturn the jury's verdict.

■ Defendant next contends the trial court erred in admitting

into evidence the results of serological electrophoresis blood tests taken on stains found on the clothing he allegedly wore on the day of the crime. Defendant argues such tests are unreliable and have not won general scientific acceptance. Defendant, however, failed to challenge at trial the reliability of electrophoresis testing and, therefore, has waived any error in the admission of the test results. (See *People v. Redman* (1985), 135 Ill. App. 3d 534, 538-39, 481 N.E.2d 1272, 1275-76; *People v. Alzoubi* (1985), 133 Ill. App. 3d 806, 810, 479 N.E.2d 1208, 1210.) More importantly, the forensic scientist who performed the tests discovered that the victim had type A blood and the defendant had type O blood. The bloodstain found on defendant's clothing contained type A blood, thereby excluding defendant as its contributor and including the victim as a possible source. Because the scientific reliability of the ABO system has already been accepted by our courts (see *People v. Gillespie* (1974), 24 Ill. App. 3d 567, 573, 321 N.E.2d 398, 402), any error in the admission of the electrophoresis test results was harmless. We also note that a challenge to the reliability of such testing goes to the weight of the evidence, not to its admissibility. (See *People v. Phillips* (1987), 159 Ill. App. 3d 483, 490, 511 N.E.2d 1193, 1197; *Redman*, 135 Ill. App. 3d at 539-40, 481 N.E.2d at 1276-77; *People v. LaSumba* (1980), 92 Ill. App. 3d 621, 626, 414 N.E.2d 1318, 1322, *cert. denied* (1981), 454 U.S. 849, 70 L. Ed. 2d 138, 102 S. Ct. 170.) The trial court committed no error in allowing into evidence the electrophoresis test results.

Defendant's third and fourth points on appeal pertain to photographs of the victim's body and a videotape of the crime scene and alleged route taken by defendant to the murder scene. Specifically, defendant argues the video and photos included close-up views of the victim's face and head wound which served only to inflame and prejudice the jury. Secondly, the audio portion of the videotape of the route taken to the crime scene, according to defendant, served only to bolster the testimony of McGowan through the use of a prior consistent statement. Defendant's contentions have little merit.

■ We initially note defendant has waived any error in the admission of the photos and most of the videotape by failing to object to their admission at trial or in his post-trial motions. (See *People v. Williams* (1983), 113 Ill. App. 3d 49, 54, 446 N.E.2d 1236, 1239.) Assuming defendant had properly preserved his contentions for appeal, we still would be precluded from finding any error. Whether a photograph (and in this case a videotape) of a deceased victim should be admitted into evidence rests within the sound discretion of the trial court. (*Williams*, 113 Ill. App. 3d at 54, 446 N.E.2d at 1239; *People v.*

*Hefley* (1982), 109 Ill. App. 3d 74, 76, 440 N.E.2d 173, 175.) If the photos are relevant to establish any fact in issue, such as the cause of death, the amount of force used, the identity of the victim, and/or the condition of the body, they are admissible despite their gruesome nature and the existence of oral testimony on the same issues. (See *People v. Foster* (1979), 76 Ill. 2d 365, 378, 392 N.E.2d 6, 11; *People v. Henenberg* (1973), 55 Ill. 2d 5, 13-14, 302 N.E.2d 27, 31; *Hefley*, 109 Ill. App. 3d at 76, 440 N.E.2d at 175.) The photos and videotape here are probative of the cause of death by revealing the extent of the beating the victim suffered. They depict the nature, extent and location of the victim's injuries and the amount of force used to inflict them. They also tend to prove the identity of the victim as well as corroborate testimony of witnesses, including the pathologist, regarding the beating. Finally, they depict the condition of the crime scene and the condition of the body as it was when found. The fact that the photographs and videotape are potentially prejudicial to defendant stems from the fact that they accurately depict a horrible crime. (See *Foster*, 76 Ill. 2d at 378, 392 N.E.2d at 11.) We conclude that the photos and videotape are more probative than prejudicial and therefore find no error in their admission into evidence in this instance. See *Kubat*, 94 Ill. 2d at 494-95, 447 N.E.2d at 272-73; *People v. Feagans* (1983), 119 Ill. App. 3d 941, 948-49, 457 N.E.2d 459, 464; *Williams*, 113 Ill. App. 3d at 54, 446 N.E.2d at 1239-40.

■ Defendant also waived any error with respect to the portion of the videotape depicting the route allegedly taken by defendant and his accomplices from the park to the murder scene based on statements made by McGowan to the police. Defense counsel expressly stated at trial he had no objection to allowing the jury to hear the audio portion of this section of tape. Furthermore, counsel argued during closing that, as the jury could see from the video, the victim could have escaped or called for help along the route if he had felt threatened during the trip. Clearly, defendant has waived this issue for review.

■ Assuming defendant had not waived the issue, the trial court properly admitted both the audio and visual portion of this section of the tape. The purpose of the video was not to bolster McGowan's testimony, as defendant claims, but rather to assist the jury in comprehending all of the witnesses' testimony. Witnesses may use aids to illustrate their testimony. (See *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 804-05, 400 N.E.2d 599, 607.) Moreover, defendant never disputed the route taken; his defense was that Ewing or McGowan killed the victim. Therefore, any error in admitting the video was harmless.

See *People v. Tate* (1984), 122 Ill. App. 3d 660, 666, 462 N.E.2d 662, 667. See also *People v. Olmos* (1978), 67 Ill. App. 3d 281, 295-96, 384 N.E.2d 853, 864-65.

■ Defendant's final complaint with respect to the videotape is that the trial court committed reversible error by allowing the jury to have the tape during its deliberations when the autopsy of the victim was sandwiched between the footage of the crime scene and the route taken to the crime scene. The record does not support defendant's contention that the jury viewed the autopsy footage. Because it is defendant's burden to provide a record which shows the error he claims, any doubts arising from an incomplete or silent record must be resolved against him. See *People v. Adams* (1984), 128 Ill. App. 3d 725, 729, 471 N.E.2d 575, 578; *Hefley*, 109 Ill. App. 3d at 76, 440 N.E.2d at 176.

■ Defendant next argues the trial court improperly denied his *pro se* post-trial motion without first appointing new counsel to prepare and present his allegations of ineffective assistance of counsel. There is, however, no *per se* rule that the trial court must appoint new counsel to represent defendant on such a claim. (*People v. Davis* (1986), 151 Ill. App. 3d 435, 442, 502 N.E.2d 780, 785.) Instead, defendant's allegations must be considered in relation to the factual situation involved. (See *People v. Chrisos* (1986), 142 Ill. App. 3d 747, 753, 492 N.E.2d 216, 220.) If those allegations lack merit or pertain simply to matters of trial strategy, then no new counsel need be appointed. (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 139, 474 N.E.2d 466, 474.) Only if counsel has neglected defendant's case should new counsel be called upon to argue defendant's claim. (See *People v. Krankel* (1984), 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049; *Jackson*, 131 Ill. App. 3d at 139, 474 N.E.2d at 474. But see *People v. Simpson* (1984), 129 Ill. App. 3d 822, 841, 473 N.E.2d 350, 363.) Such is not the case here. A review of the record reveals defendant's allegations either lack merit or address matters of trial strategy.

Defendant claims his counsel failed to question the forensic scientist about or bring in an expert to test the blood types of his accomplices to determine whether it was their blood on the jogging suit. Such evidence would not have advanced defendant's defense that they killed the victim. At best, such evidence would have proved only that the accomplices could not be eliminated as the source of the blood on defendant's clothing. There was no evidence, however, that either accomplice sustained injuries to have bled on defendant's clothing.

Defendant's other claims appear to attack his counsel's depth of or extent of cross-examination of the State's witnesses. These claims,

however, do not constitute strong and convincing proof of incompetency when considered within the totality of counsel's conduct during trial. Remanding for a new hearing on defendant's motion with new counsel, therefore, is not warranted in this instance. See *Davis*, 151 Ill. App. 3d at 444, 502 N.E.2d at 786; *Chrisos*, 142 Ill. App. 3d at 753-54, 492 N.E.2d at 220. See also *People v. Mallette* (1985), 131 Ill. App. 3d 67, 75-76, 475 N.E.2d 237, 243.

Defendant's final two contentions pertain to his sentence. Defendant first argues the trial court abused its discretion in sentencing him to a maximum sentence of natural life based on his youth and troubled past. Second, defendant complains his sentence is grossly disparate from those of his codefendants and should be reduced. We find no merit in either contention.

■ As our courts have recognized countless times, the imposing of punishment is one of the most important and sensitive of judicial responsibilities and we, as a reviewing court, must give great weight to the judgment of the trial court. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121, 1125.) We therefore will modify a sentence only when "the punishment clearly departs from the spirit and purpose of fundamental law, and the requirement of our constitution that the sentence be proportionate to the nature of the offense and measure the possibilities for rehabilitation." (*People v. Treadway* (1985), 138 Ill. App. 3d 899, 904, 486 N.E.2d 929, 933.) As one court recognized:

> "The day is long past when this court, or any court, should quiver like a pole-axed blanc-mange at the mention of youth and rehabilitation. These are proper considerations in the fixing of sentences, but they are not the sole elements. The nature of the crime, the protection of the public, deterrence and punishment have equal status in the consideration." *West*, 54 Ill. App. 3d at 909, 370 N.E.2d at 270.

■ Here, the trial court carefully considered all factors in its decision and found nothing in mitigation. First, defendant has a history of prior criminal convictions. Second, when he murdered the victim, he was on probation for aggravated battery and had not complied with the condition he serve weekends in jail. Third, one week prior to murdering the victim, defendant had attacked an employee at a store with a tire tool. And, fourth, the psychological report ordered by the court revealed that defendant blamed his problems on others and was prone to acting unpredictably. The court specifically noted defendant's troubled youth but also pointed out that defendant refused to take advantage of opportunities for treatment of his problems. The court

found no significant potential for rehabilitation. More importantly, the court observed that defendant selected the victim at random, and without provocation, in spite of pleas for mercy, beat him to death. Finding the murder to be accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, the trial court determined defendant posed a threat to society so great that even after having served the maximum extended term for murder he would still be a threat. We find no abuse of the court's discretion in sentencing defendant to natural life imprisonment. See, *e.g.*, *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353; *People v. Wilson* (1985), 132 Ill. App. 3d 862, 867-68, 478 N.E.2d 556, 560-61.

 As for the disparity between defendant's sentence and those of Ewing, McGowan and Smith, we find that it is warranted in this instance based on the nature and extent of each's participation in the offense, prior criminal history (or lack thereof) and rehabilitative potential. (See *Godinez*, 91 Ill. 2d at 55-56, 434 N.E.2d at 1126; *People v. Knight* (1985), 139 Ill. App. 3d 188, 197, 486 N.E.2d 1356, 1362, *cert. denied* (1987), 480 U.S. 905, 94 L. Ed. 2d 518, 107 S. Ct. 1346.) Quite clearly, defendant had the leading role in the planning and execution of the crimes here. He is the one who wanted to rob someone in the first place. Defendant sat in the front seat of the victim's car, told the victim what to do, threatened him, found the money in the glove compartment and ultimately took over driving the victim's car. Finally, defendant beat the victim to death with a car jack after Ewing and McGowan already had stopped beating him with their hands and fists. Defendant's degree of participation in the offenses was substantially greater than that of his codefendants. In addition, defendant also had a greater criminal record and less rehabilitative potential. Defendant's sentence is not unjustly disproportionate. See *People v. Szabo* (1983), 94 Ill. 2d 327, 353, 447 N.E.2d 193, 205, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330; *People v. Dowd* (1981), 101 Ill. App. 3d 830, 851, 428 N.E.2d 894, 909. *Cf. People v. Bares* (1981), 97 Ill. App. 3d 728, 738, 423 N.E.2d 538, 545.

For the reasons discussed above, we affirm the judgment of the circuit court of Madison County.

Affirmed.

WELCH and LEWIS, JJ., concur.