THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER G. DAVIS, Defendant-Appellant.

Fifth District    No. 5—88—0371

Opinion filed February 1, 1991.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Darrell Williamson, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial in the circuit court of Randolph County, defendant, Roger G. Davis, was found guilty of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)) and aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)). Defendant was sentenced to five years' imprisonment on the abuse charge and 10 years' imprisonment on the assault charge, to run concurrently. In this cause defendant questions whether the circuit court erred in (1) admitting the testimony of Tish LaRock that she believed the victim was truthful in her description of the assault, (2) allowing Abigail Moore-Runge to testify that abused children frequently masturbate after being abused, (3) admitting testimony that defendant had watched pornographic movies in the same time frame he sexually assaulted his daughter, and (4) failing to appoint alternate counsel for post-trial matters. We affirm.

On May 20, 1988, defendant was charged by amended information with the aggravated criminal sexual abuse of his 10-year-old daughter, J.D., between June 12, 1986, and July 15, 1986. In another count, he was charged with the aggravated criminal sexual assault of J.D. between October 30, 1986, and November 25, 1986.

A jury trial was held on May 23 and 24, 1988. J.D. testified that defendant regularly touched her "private parts" beginning when she was 2½ years old. According to J.D., defendant touched her with both his hand and his penis. When she was five years old, her parents divorced and her father moved. After a while, defendant married J.D.'s stepmother, Gayla Davis.

J.D. visited defendant and Gayla near the end of June 1986. At that time, defendant touched J.D. with his hands again. He touched her buttocks and rectum, his finger entering the rectum. He did nothing else, as the telephone rang, and he was interrupted. Between Halloween and Thanksgiving of that same year, defendant penetrated J.D.'s vagina with his penis.

During 1986, J.D. visited her father and stepmother every other weekend. During that time, defendant frequently would not wear any clothes in the house. When she stayed at defendant's house, J.D. slept

on the couch. While she slept on the couch, defendant often would watch pornographic movies in the same room.

In December 1986, J.D. first reported the activity to the authorities. At that time, however, she did not recount defendant's touching her with his penis. She finally reported this in February 1987, explaining that she was "holding it back."

Tish LaRock, a pediatric nurse at Cardinal Glennon Children's Hospital, stated that most of her training had been specifically in sexual abuse evaluations. Nurse LaRock has worked with sexually abused children since 1979, dealing with over 3,000 children she believed to have been sexually abused. She explained that as part of her training, she learned how to talk to children without leading them into making specific statements. As part of her interviews with the children, LaRock used anatomically correct dolls to find out how much the children knew about "private parts" and to clarify a child's statement. According to LaRock, J.D. was very familiar with the private parts of the dolls and was somewhat anxious and embarrassed answering her questions.

When the People asked if J.D. appeared to be a child who had been sexually abused, Nurse LaRock stated:

"I felt that she was very truthful in her answers. We clarified from the beginning that she was to tell me the truth and she attempted—I felt that she was being very truthful in answering the questions."

During closing arguments, the People reminded the jury of this statement.

On cross-examination, defense counsel also asked LaRock whether she thought J.D. had been truthful when she talked with her in February 1987. Again, LaRock stated that she felt J.D. had been truthful.

Gayla Davis testified that in 1983 she had seen J.D. spread her legs, bend her knee and rub her vaginal area. In addition, she had seen J.D. rubbing herself through her clothes. Child abuse investigator Abigail Moore-Runge testified that she had training in investigating child abuse and had frequently testified in such cases. Moore-Runge stated that she was not surprised to discover that J.D. had been masturbating. Moore-Runge stated that such behavior is not rare among sexually abused children. It was her "understanding" that children, once stimulated, will restimulate themselves. During closing arguments, the People reminded the jury of this testimony as well.

Defendant filed a one-page motion for a new trial alleging that he had not been found guilty beyond a reasonable doubt. He later filed,

*pro se,* a supplement to the motion attacking the credibility of LaRock and Dr. Monteleone, another witness.

On June 27, 1988, the court held a sentencing hearing. At that time, defendant spoke directly to the court. He indicated that he felt his attorney had not done an adequate job of challenging the credibility of LaRock and Monteleone. Defendant did not ask the court to appoint new counsel, however. The motion for a new trial was denied, and defendant was sentenced.

Defendant's first issue on appeal is whether the circuit court erred in allowing Nurse LaRock to testify that, in her opinion, the victim was being truthful in describing the assault. Defendant specifically argues that LaRock's testimony improperly bolsters the victim's testimony and invades the province of the jury. The People respond that the issue is waived because defendant did not object to it either at trial or in a written post-trial motion. In fact, defendant specifically questioned the witness about the statement at length.

■ The case at bar is similar to *People v. Killebrew* (1973), 55 Ill. 2d 337, 303 N.E.2d 377, where defendant failed to object at trial to the admission of a mug shot, and then questioned the witness at length about it. The supreme court stated that failure to object waives the objection. The court then reaffirmed its holding that " '[a] party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial.' " (55 Ill. 2d at 341, 303 N.E.2d at 380, quoting *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820.) It seems clear that defendant is attempting to do that here.

This case is remarkably similar to the recent Second District Appellate Court case of *People v. Hickox* (1990), 197 Ill. App. 3d 205, 553 N.E.2d 1166. In *Hickox,* the defendant argued that the circuit court erred in considering expert testimony of the complaining child's credibility. There, the defendant also failed to object to the testimony either at trial or in a post-trial motion. The Second District Appellate Court, citing *People.v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, held the issue waived. *Hickox,* 197 Ill. App. 3d at 215, 553 N.E.2d at 1174.

Defendant next argues that, although not preserved by a contemporaneous objection at trial or by a post-trial motion, the error was a plain error involving a substantial right of defendant. Thus, defendant urges this court to review it under Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)).

●■ ■ The plain error doctrine is applicable "only when the question of guilt is close and the evidence in question might have signifi-

cantly affected the outcome of the case [citations], or where the error alleged is so substantial as to reflect on the fairness or impartiality of the trial regardless of how closely balanced the evidence is [citations]." (*People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241, 1246; *People v. Hickox* (1990), 197 Ill. App. 3d 205, 215, 553 N.E.2d 1166, 1174.) It does not appear to us that the evidence in this case is closely balanced or the error in question so substantial as to reflect on the fairness or impartiality of the trial. We therefore decline to review this under the plain error doctrine.

Defendant next argues that the testimony of Abigail Moore-Runge was lacking a proper foundation, was irrelevant and inflammatory. The witness was allowed to testify that it is her "understanding" that children who have been sexually assaulted or abused masturbate in re-enactment of the event. The People respond that the issue is waived by defendant's failure to bring it up in a post-trial motion. In the alternative, the People argue that the witness was qualified and a foundation was properly laid. In addition, the People argue that the testimony is extremely relevant.

We do not believe this issue was waived. The record is clear—defendant objected at trial, the court sustained the objection, and requested additional foundation evidence. The People presented additional evidence of the witness' qualifications, background and experience. The People then re-asked the question. Defendant objected again, and the court overruled the objection.

Defendant argues that the witness offered no evidence to support her conclusions other than her basic qualifications and credentials as a child abuse investigator. This is true. Defendant further argues that because the People offered no testimony describing the basis of the witness' opinion, defendant could not properly cross-examine the witness. This is not true. The circuit court is granted wide discretion in determining the admissibility of expert testimony. (*People v. Stapelton* (1972), 4 Ill. App. 3d 477, 480, 281 N.E.2d 76, 78.) The People qualified the witness as an expert, and we see no error in recognizing this witness as an expert.

In *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, the supreme court held that an expert is not required to divulge the facts or data considered before being allowed to state his opinion. In *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 438, 488 N.E.2d 1087, 1090, this court extended that ruling to include experts in criminal cases. Here, as in these cases, cross-examination is an appropriate method of eliciting the facts underlying an expert's opinion. (*People v. Angelly* (1988), 167 Ill. App. 3d 477, 482, 521 N.E.2d 306, 309; *Le-*

*brecht v. Tuli* (1985), 130 Ill. App. 3d 457, 482, 473 N.E.2d 1322, 1340.) The adverse party has the burden of establishing these facts through cross-examination. (*Wilson v. Clark* (1981), 84 Ill. 2d at 194, 417 N.E.2d at 1327; *People v. Angelly* (1988), 167 Ill. App. 3d 477, 482, 521 N.E.2d 306, 309; *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 438, 488 N.E.2d 1087, 1090-91.) As defendant did not question the witness about the basis of her opinion testimony on cross-examination, he cannot challenge it now.

■ Defendant objects that the testimony "literally destroyed the defendant's defense." There was testimony that J.D. had masturbated, and the main defense was that the injuries found by the doctors and investigators were self-sustained. The People have a right to attempt to refute any defense offered. For this reason alone, the testimony is quite relevant, and although perhaps inflammatory, its probative value far outweighs the possible prejudice.

■ The case of *People v. Bryant* (1986), 113 Ill. 2d 497, 512-14, 499 N.E.2d 413, 420-21, cited by defendant for the proposition that an expert witness cannot give an opinion without stating its foundation is easily distinguished from the case at bar. In *Bryant*, an expert witness was called for the limited purpose of explaining that broken glass taken from a defendant's shoe was tested and was of the same refraction as that of broken glass at the crime scene. When asked by the prosecutor what conclusion he had reached regarding the glass, the expert concluded that there was a good probability that the glass came from the same source. (113 Ill. 2d at 513, 499 N.E.2d at 420.) In the case at bar, however, the witness was qualified to discuss the broad subject of sexual abuse. This is clearly not as scientifically clear or as specific as the test the *Bryant* witness was qualified to discuss. Here, the witness described the methodology of discovering abuse as well as her training. She testified that other investigators trained her based on their experience in the field. Based on her training and experience, she testified it is her understanding that if children who have been sexually abused masturbate, they do so in reenactment of that abuse. As stated above, the circuit court did not abuse its discretion in admitting the testimony. If defendant wanted to challenge the testimony, he should have done so on cross-examination.

●■ Defendant next challenges the admission of testimony that he watched pornographic movies in the same time frame as the sexual assault on J.D. As we discussed above, failure to object at trial or at a post-trial motion waives the objection. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. Killebrew* (1973), 55 Ill. 2d 337, 341, 303 N.E.2d 377, 380.) As before, we do not believe that

the question of guilt is close or that the evidence in question might have significantly affected the outcome of the case to warrant plain error review. *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241, 1246; *People v. Hickox* (1990), 197 Ill. App. 3d 205, 215, 553 N.E.2d 1166, 1174.

●■ ■ In addition to the arguments listed above, defendant asserts that he received ineffective assistance of counsel due to each of the alleged errors above. A defendant must prove that "counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) According to our supreme court:

> "The United States Supreme Court has made clear that the proper standard for attorney performance is that of 'reasonably effective assistance' (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064), which is ' "within the range of competence demanded of attorneys in criminal cases" ' (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449). Given the variety of circumstances faced by defense counsel and the range of legitimate decisions regarding how best to represent a defendant, '[j]udicial scrutiny of counsel's performance must be highly deferential.' (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.) In fact, the defendant claiming ineffective assistance must overcome a strong presumption that the challenged action of counsel was the product of sound trial strategy and not of incompetence. (466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.)" (*People v. Harris* (1989), 129 Ill. 2d 123, 156, 544 N.E.2d 357, 371.)

Here, counsel's decision to cross-examine Nurse LaRock instead of objecting to her testimony is similar to counsel's decision not to call a particular witness in *Harris*. It was an on-the-spot, seat-of-the-pants trial lawyer judgment which deserves judicial deference. 129 Ill. 2d at 156, 544 N.E.2d at 371.

As we do not deem defendant's objection to Moore-Runge's testimony waived, defendant's claim that his trial counsel was ineffective for not preserving his objection is moot.

Defendant claims that his counsel was ineffective in not preserv-

ing for review the question of admissibility of testimony that he had watched pornographic movies in the same time frame as the assault occurred. Once again, we believe that this is an on-the-spot, seat-of-the-pants attorney judgment which deserves judicial deference. (*People v. Harris* (1989), 129 Ill. 2d 123, 156, 544 N.E.2d 357, 371.) Although not an exhaustive list, strategically, counsel may have: (1) feared accentuating a damaging issue in front of the jury and therefore chose not to object, (2) feared making it out to be a major issue when he believed it was not, (3) thought the testimony was admissible and by objecting he would be fighting a losing battle, (4) thought the testimony unimportant, or (5) considered using the testimony as a weapon against the People in closing argument. For example, counsel may have considered arguing to the jury that the People's case was so weak and lacking of hard evidence, they had to introduce evidence of pornographic movies to attack defendant's character. Viewing counsel's conduct of the trial as a whole, as we must (*People v. Mitchell* (1984), 105 Ill. 2d 1, 15, 473 N.E.2d 1270, 1277; *People v. Stewart* (1984), 101 Ill. 2d 470, 493, 463 N.E.2d 677, 688), we believe the failure to object was strategic, and not ineffective assistance.

Finally, defendant asserts that the circuit court erred in failing to appoint new counsel for post-trial matters after he alleged that his attorney did not investigate the qualifications of the People's expert witnesses. In addition, defendant complained that his attorney did not call two particular witnesses. Specifically, defendant argues that he need only allege that his original attorney was ineffective to warrant appointment of another attorney. The People respond that mere dissatisfaction with the handling of defendant's case does not warrant, *per se*, the appointment of separate counsel.

●■ ■ Defendant cites *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, for the proposition that merely questioning the effectiveness of trial counsel will warrant a new attorney for post-trial matters. However, the law is well settled that *Krankel* did not establish a *per se* rule that all *pro se* motions for a new trial by defendants alleging ineffective assistance of counsel mandate appointment of new counsel to assist in the motion irrespective of the basis of the motion and absence of a request for new counsel. (*People v. Washington* (1989), 184 Ill. App. 3d 703, 711, 540 N.E.2d 1014, 1019; *People v. Mallette* (1985), 131 Ill. App. 3d 67, 75, 475 N.E.2d 237, 243; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138-39, 474 N.E.2d 466, 474; see also *People v. Generally* (1988), 170 Ill. App. 3d 668, 676, 525 N.E.2d 106, 111.) Instead,

"the trial court should examine the factual matters underlying

the defendant's claim, and, if the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed. Only if the allegations show possible neglect of the case for which counsel could undertake an independent evaluation of defendant's complaint and present the matter to the court should new counsel be appointed. *Generally*, 170 Ill. App. 3d at 676, 525 N.E.2d at 111; *Jackson*, 131 Ill. App. 3d at 139, 474 N.E.2d at 474-75." (*People v. Washington* (1989), 184 Ill. App. 3d 703, 711, 540 N.E.2d 1014, 1019.)

In the case at bar, the circuit court treated the *pro se* post-trial motion properly. The court listened to what defendant had to say and characterized the complaints as relating to trial strategy. Upon reviewing the record, we believe the court was adequately apprised of defendant's complaints with his attorney. The court explained to defendant that if he believed he was coerced or his will overborne in making these strategy decisions, defendant needed to express that in court. Defendant did not, however, and the court stated, "What you are telling me is that Mr. Brown gave you some advice, that you didn't like the result and the outcome of the trial, and now you somehow believe the advice was wrong or incorrect." The court then denied the motion for a new trial.

● ■ In *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138, 474 N.E.2d 466, 474, defendant also complained that his attorney did not call a particular witness. Trial counsel explained that the witness had not been called because the testimony would have been cumulative to that already on record. The Fourth District Appellate Court explained:

"The reason for appointment of new counsel [in a post-trial motion hearing] is that the original trial attorney would generally be under a conflict of interest were he called upon to justify his actions in the case." (131 Ill. App. 3d at 138, 474 N.E.2d at 474.)

In the case at bar, as in *Jackson*, an interchange between the court and defendant's attorney was necessary. Counsel expressed his client's desire to address the court and explained that defendant wished to challenge the credibility of the People's witnesses and the sufficiency of the evidence. Later, counsel explained to the court that defendant alleged that counsel did not call two witnesses and that counsel was not aware of two witnesses defendant had who were not called. The court then allowed defendant to address the court. We cannot believe that in responding to the circuit court's questioning, a defendant's attorney was somehow in an adverse position to his cli-

ent's interests. See *Jackson*, 131 Ill. App. 3d at 139, 474 N.E.2d at 475.

● In the instant case, the circuit court examined the factual matters underlying defendant's claim and found that it pertained to matters of trial strategy. The allegations apparently did not show neglect of the case for which counsel could undertake an independent evaluation of defendant's complaint and present the matter to the court, nor did they show a conflict over the strategy employed. Thus, there is no need for the appointment of new counsel. The circuit court committed no error.

For the foregoing reasons, the order of the circuit court of Randolph County is affirmed.

Affirmed.

LEWIS and HOWERTON, JJ., concur.