THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES SMITH, Defendant-Appellant.

Fifth District   No. 5—92—0409

Opinion filed July 20, 1993.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Charles Smith, was found guilty after a jury trial of home invasion, residential burglary, theft under $300, and two counts of aggravated criminal sexual assault. He was sentenced by the circuit court of Jackson County to 30 years' imprisonment for home invasion to be served concurrently with a sentence he was already serving, two 30-year prison terms for the aggravated criminal sexual assaults to be served concurrently with each other but consecutively to the home invasion, and 15 years' imprisonment for residential burglary and 364 days' imprisonment for theft under $300, both to be served concurrently with his other sentences. Defendant appeals his convictions and sentences. We affirm.

Once again we are confronted with the short-lived, but highly damaging, criminal spree of defendant which took place in August and September of 1988 in Carbondale, Illinois. This time we are concerned with defendant's first and most vicious attack. In the early morning hours of August 25, 1988, the victim, a junior at Southern Illinois University living alone in a mobile home park, was awakened by someone jumping onto her bed. The assailant straddled her and, holding a knife to her throat, told her not to scream. The assailant, who sounded like a black male, asked her if she had any money. When she replied she did not, the assailant hit her across her face. He then got off the bed, took off his pants and the victim's underwear, and had vaginal intercourse with her. The assailant told her he liked "breaking in" new SIU students. He then made the victim roll over and keep her face in a pillow while he turned on a light and proceeded to rummage through the victim's belongings. The victim specifically heard the assailant go through her cassette tapes. He then turned off the light and sexually assaulted the victim again, both vaginally and anally. Once again the assailant made the victim hide her face while he turned on a light and searched through her belongings.

This time the assailant found the victim's car keys. He informed her where he would leave the car and ordered the victim not to call the police or he would return and shoot her. The assailant then left the trailer taking the victim's car.

Forensic investigation revealed that fingerprints on the inside of the kitchen window through which the assailant had entered matched those of defendant. Analysis of seminal material found at the scene established that defendant could not be excluded as a possible donor. Approximately 17% of the black population has the same type of blood characteristics as does defendant. Additionally, both the victim and defendant tested positive for the same strain of gonorrhea. The victim had not been diagnosed or treated for gonorrhea prior to the assault. The police also found the victim's car where the assailant had informed her he would leave it, a location approximately .7 of a mile away from the place defendant was then staying. Numerous cassette tapes owned by the victim were found among defendant's possessions. Defendant presented no evidence or testimony. The jury found defendant guilty on all charges tendered.

On appeal, defendant raises five issues: (1) the trial court erred in denying his motion for continuance to allow DNA testing; (2) the State failed to prove beyond a reasonable doubt defendant's guilt of aggravated criminal sexual assault with the aggravating factor being transmission of a sexual disease; (3) the aggravated criminal sexual assault statute with the aggravating factor being transmission of a sexual disease is unconstitutional; (4) one of defendant's convictions for aggravated criminal sexual assault must be reversed; and (5) defendant's sentence of 60 years' imprisonment is excessive and represents an abuse of discretion. We already have addressed the constitutionality of the aggravated criminal sexual assault statute in *People v. Smith* (1993), 245 Ill. App. 3d 712, 719-20, and need not discuss it further here. Suffice it to say, we find the statute to be constitutional. We further find no merit to any of defendant's other contentions.

■ Defendant first argues the trial court erred in denying his motion for continuance to allow DNA testing when the question of the identification of the assailant was at the heart of the trial. Defendant asserts the only way he could prove conclusively that he was not guilty was to have DNA tests conducted. The State counters that defendant waived any possible error by failing to file a post-trial motion. The State also asserts the trial court properly exercised its discretion in denying the motion because it was untimely, and any error resulting from such a denial was harmless in light of the over-

whelming evidence establishing defendant's guilt. We agree with the State.

First, defendant failed to file a post-trial motion thereby waiving any error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Second, defendant's motion for a continuance to seek DNA testing was untimely. Defendant filed the motion three days before trial was to begin. Granting of his motion would require a delay of four to six months in a case already 3½ years old. As the trial court pointed out, defendant already had filed other motions, including one for continuance, and obtained rulings on them some three months earlier. If defendant truly believed DNA testing would exonerate him, he should have made the proper motion much earlier. In fact, defendant already had raised the same issue some eight months earlier in one of his other sexual assault cases and easily could have made a similar motion in this case at that time. We also note defense counsel's revelation that he and defendant had discussed the matter several months before trial and decided DNA testing would not be in defendant's best interest. Besides the facts that defendant did not even allege he had attempted to locate an expert to perform the testing (see *People v. Smith*, 245 Ill. App. 3d at 716-17; *People v. Hebel* (1988), 174 Ill. App. 3d 1, 34, 527 N.E.2d 1367, 1388) and that the granting or denial of a motion for continuance is a matter within the trial court's discretion (see *People v. Dean* (1981), 99 Ill. App. 3d 999, 1004, 426 N.E.2d 279, 283), defendant refuses to recognize that the evidence implicating him in the crime is overwhelming. Allowance of DNA testing would not have changed the outcome of the trial; consequently, defendant suffered no prejudice from the denial of his motion. (See *People v. Johnson* (1991), 220 Ill. App. 3d 550, 559, 581 N.E.2d 118, 125; *People v. Hanson* (1983), 120 Ill. App. 3d 84, 88, 457 N.E.2d 1048, 1051.) The victim did not know defendant, yet his fingerprints were found on the inside of the window through which the assailant entered her trailer. The window had been closed prior to the victim retiring for the night and was found open after the assault. Obviously, the fingerprints were impressed at the time the offense was committed. (See *People v. Rhodes* (1981), 85 Ill. 2d 241, 249-51, 422 N.E.2d 605, 608-09.) Other evidence revealed the victim's missing cassette tapes were retrieved from defendant's possessions. Both defendant and the victim were infected with the same strain of gonorrhea after the assault, and defendant could not be excluded as a possible donor of the tested seminal material found at the scene of the assault. Evidence of a similar sexual assault against another woman two weeks later also served to identify defendant as the victim's assailant.

Under such circumstances, we find no error in the denial of defendant's motion. Absence of DNA testing did not deprive defendant of a fair trial under these circumstances.

Defendant next argues he was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault by causing bodily harm to the victim in transmitting a sexual disease when there was no proof the victim did not have the disease prior to the assault. We disagree.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276; *People v. Meador* (1991), 210 Ill. App. 3d 829, 830, 568 N.E.2d 1386, 1387.) The relevant inquiry is whether, after viewing the evidence, whether it be direct or circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d· 363, 374, 586 N.E.2d 1261, 1266; *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1025, 554 N.E.2d 556, 562.) It is not our function to substitute our judgment or retry defendant; resolution of factual disputes and the assessment of the credibility of witnesses are for the trier of fact. (*People v. Bigham* (1992), 226 Ill. App. 3d 1041, 1047, 590 N.E.2d 115, 119-20; *Geneva*, 196 Ill. App. 3d at 1026, 554 N.E.2d at 562.) The jury here resolved the matter against defendant; we cannot say such a resolution was in error.

■ Aggravated criminal sexual assault occurs when an individual commits criminal sexual assault and causes bodily harm to the victim. (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(2).) "Bodily harm" includes sexually transmitted diseases. (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(b); see also *People v. Rodarte* (1989), 190 Ill. App. 3d 992, 999, 547 N.E.2d 1256, 1260.) Here the victim testified unequivocally and without contradiction that she did not have gonorrhea before the assault but was infected with the disease afterward. Tests conducted on defendant after the assault revealed he was infected with the same strain of gonorrhea. Although the medical expert could not determine who had the disease first, the jury logically could infer that defendant transmitted the disease to the victim during the criminal sexual assault. The doctor who examined the victim at the hospital immediately after the assault testified the victim denied having a venereal disease prior to the assault. And, the victim testified that during the assault, her assailant asked her if it was her first time to which she

replied that it was. The evidence as a whole is not so unsatisfactory as to justify a reasonable doubt of defendant's guilt in this instance.

Defendant next asserts one of his aggravated criminal sexual assault convictions must be reversed because there was only one sexual assault. The State counters defendant has waived any error by failing to object at trial or raise the issue in a post-trial motion. We reject the State's position (see *People v. Smith*, 245 Ill. App. 3d at 720-21) and therefore address the merits of the issue.

■ Multiple convictions and concurrent sentences are permitted when a defendant has committed several acts, despite the interrelationship of those acts. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) Factors to be considered in determining whether a defendant's conduct constitutes separate acts are the time interval occurring between successive parts of the defendant's conduct, the existence of an intervening event, the similarity of the acts performed, the identity of the victim, and the location of the conduct. (See *Rodarte*, 190 Ill. App. 3d at 1001, 547 N.E.2d at 1261-62.) Here, defendant committed at least two offenses based upon separate acts of sexual penetration of the victim's vagina and anus. The victim testified the assailant first had vaginal intercourse with her for approximately five minutes. He then arose and rummaged through the victim's belongings. The assailant then returned and assaulted her anally twice and vaginally once. Clearly, defendant committed multiple acts. As stated in *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802: "To permit a defendant to rape an individual several times over a period of time in the same place with little or no break between each act deprecates the heinous and violent nature of each act and the effect each act has upon the victim." (*Segara*, 126 Ill. 2d at 77, 533 N.E.2d at 805.) For defendant to claim only one assault occurred " 'demeans the dignity of the human personality and individuality.' " (*Segara*, 126 Ill. 2d at 77, 533 N.E.2d at 805, quoting *Pruitt v. State* (1978), 269 Ind. 559, 565, 382 N.E.2d 150, 154.) The evidence in this instance clearly supports two convictions for aggravated criminal sexual assault.

For his final point on appeal, defendant contends the total of his sentences is excessive in light of his rehabilitative potential. We believe the trial court properly exercised its discretion in sentencing defendant in this instance.

As has been recognized countless times, the imposition of punishment is one of the most important and sensitive of judicial responsibilities and we, as a reviewing court, must give great weight to the judgment of the trial court. (*People v. Generally* (1988), 170 Ill. App.

3d 668, 677, 525 N.E.2d 106, 111.) While youth and potential for rehabilitation are proper factors to be considered in setting sentence length, they are not the only elements to be considered. The nature of the crime, protection of the public, deterrence, and punishment all have equal status in the determination. (*Generally*, 170 Ill. App. 3d at 677, 525 N.E.2d at 111.) The ideal sentence is one which adequately punishes the offender for his misconduct, safeguards the public from further offenses, and reforms and rehabilitates the offender into a useful member of society. (*People v. Carroll* (1966), 76 Ill. App. 2d 9, 12-13, 221 N.E.2d 528, 530.) More importantly, it is not the province of this court to reduce a sentence merely as an act of judicial clemency. (*People v. Barber* (1983), 116 Ill. App. 3d 767, 779, 452 N.E.2d 725, 733.) We are to modify a sentence only when "the punishment clearly departs from the spirit and purpose of fundamental law." *Generally*, 170 Ill. App. 3d at 677, 525 N.E.2d at 111.

■ Defendant's actions at the time of the instant offenses and afterward reveal little rehabilitative potential. Defendant repeatedly assaulted the victim sexually. He slapped her, held a knife to her throat, and threatened her numerous times. Defendant also assaulted two other victims within a matter of weeks after committing the offenses here. And, just before the jury entered the courtroom to return its verdicts in this case, defendant escaped from custody. Moreover, despite overwhelming evidence against him, defendant still proclaimed his innocence, even after being convicted for the second time. Defendant clearly has demonstrated little rehabilitative potential; in fact, he has demonstrated he is still a threat to society. We therefore conclude the trial court properly exercised its discretion in sentencing defendant. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

For the aforementioned reasons, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.