THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DALE L. POSEDEL, Defendant-Appellant.

Second District   No. 2—89—0010

Opinion filed May 28, 1991.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Dale L. Posedel, appeals his conviction in a bench trial of two counts of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(1)) and his sentence to the Department of Corrections for a four-year term. He raises these issues: (1) whether the court committed reversible error when it refused to consider a prior inconsistent statement of a witness as substantive evidence under sec-

tion 115—10.1 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1); (2) whether the court erred in finding that the evidence proved him guilty beyond a reasonable doubt of aggravated battery; (3) whether the court erred in entering convictions on both counts of aggravated battery (great bodily harm and use of deadly weapon); and (4) whether the court abused its discretion in imposing a four-year sentence.

■ Inasmuch as the State concedes the third issue under the authority of *People v. King* (1977), 66 Ill. 2d 551, and we agree with that concession, the court's judgment of conviction entered on count II (aggravated battery by use of a deadly weapon) is vacated. No issue of remand for resentencing is presented because no sentence was separately imposed for that conviction.

Prior to the court hearing testimony, it received the stipulations of the parties that (1) the physician who treated the victim's, Diane Pietschman's, injuries would testify that she suffered a large hematoma, bruising and swelling in her eye, and two stitches were necessary to close the wound above her eye; and (2) that People's exhibit No. 1 was the red shirt worn by the defendant on the night of the offense.

Diane Pietschman then testified. She stated that on August 16, 1988, she and a friend were at the Drinks and Things Lounge in Waukegan. She drank three to four beers in two to three hours' time. At one point during the evening, there was some pushing and shoving over a pool game. The defendant, Dale Posedel, wearing a red polo-style shirt, and his twin brother, Dennis Posedel, wearing a white shirt, were two of the persons involved in the argument. The other two were Mike Christian and his wife, Rhonda. Pietschman stated she did not know the twins before that evening. The twins were kicked out of the lounge following this altercation over the pool game.

They returned a short time later, and Pietschman saw that the twin in the red shirt had a knife. She told the bartender, Keith Herberger, to take the knife away. Herberger did and then kicked the twins out again. They were followed outside by five or six people. Everyone came back in then, including the twins. One of them said he lost his wallet. Pietschman testified the "guy with the white shirt" was being nice, but the guy with the red shirt got thrown out again because "he didn't want to quit fighting."

About 15 to 20 minutes later, Pietschman went out, alone, to the parking lot to get cigarettes from her car. She said that when she went out, the twin wearing the white shirt was still inside talking with Mike Christian. Walking back to the lounge, Pietschman saw

"the guy with the red shirt." He was standing in the doorway of the lounge, holding an axe in front of him with both hands. She described the axe as double-bladed with a two- to three-foot-long handle. When asked on cross-examination if she was talking about a wide blade or a point, she demonstrated, stating, "It curves on both sides."

Pietschman testified that the defendant threatened her, stating, "I'm going to kill you, bitch." She turned to run back to her car and, looking back, she saw the defendant coming. She did not remember being hit. She only remembered waking up later, in an ambulance. She testified that the area where she was attacked was "pretty well lit" and she saw the defendant very clearly. Pietschman testified that the twin whose knife had been taken away by the bartender was the same one who threatened her with the axe. She stated she supposed, but did not know, that the twins were identical twins. She stated she "could probably tell them apart." She picked each twin's picture out of a separate six-picture photographic lineup and identified the defendant, Dale Posedel, as the one who threatened her with the axe.

Waukegan police officer Brian Hanna testified that, when he arrived at the lounge, Diane Pietschman was able to provide a description of her attacker who she said was wearing a red shirt and reddish jeans. Hanna talked with the bartender, Keith Herberger, and then went to the hospital. He returned to the lounge shortly thereafter because Waukegan police officer Reid broadcasted that the possible offender was in the area. When Hanna arrived back at the scene, Officer Reid had arrested Dennis Posedel, who was wearing a white shirt and blue jeans. No axe was found after a search of the immediate and surrounding area, which included a trailer park and field. A motorcycle which Officer Hanna subsequently observed the defendant riding was parked at the lounge at the time Hanna came back from the hospital that night, but the defendant was not then in the vicinity.

Waukegan police officer Richard Reid stayed at the lounge while Officer Hanna went to the hospital. The bartender asked Reid to stay on the premises while he had two motorcycles towed away. During that time, two men who came from around a fence started to walk toward Reid's squad car. The one who was wearing a red shirt, however, turned and went back around the fence. The other man in a white shirt and jeans continued on to Reid's squad. Reid asked the man his name; the man stated his name was Dennis Posedel, and Reid arrested him.

The State then rested, and the defendant's motion for a directed finding was denied. The defendant then presented the testimony of the bartender, Keith Herberger.

Herberger was one of the people who had been playing pool with the twins. He testified that Diane Pietschman reported to him that the twin in the red shirt had a knife; he did not remember telling Officer Hanna that the man he took the knife away from had on a white shirt. He remembered talking with Officer Hanna that night. His memory of the incident was fresh then, and what he told Officer Hanna was the truth. Later, after the knife incident, Herberger and a lounge patron, Mike Sperry, swung open the door to the lounge to go outside and saw "the man in the white shirt" standing with a pickaxe holding it like a baseball bat. The man said to Herberger, "Call the cops, call the cops." Neither Herberger nor Sperry went outside at that time, and Herberger called the police. This incident occurred before Herberger knew Diane Pietschman had been injured. After he called the police, Herberger went outside, but there was nobody to be seen. He described the pickaxe for the court as having about a three-foot-long handle and having "two points coming on each end."

Michael Sperry, a regular patron at the lounge, testified that he arrived just after Herberger had confiscated the knife. As Sperry was going outside, he saw at the door the twin in the white shirt holding a pickaxe. The twin raised the pickaxe up, "sort of started coming at" Sperry and said, "Call the cops" or something to that effect. Dennis Posedel was arrested as the man who stood in the doorway with the pickaxe and threatened Sperry.

The parties stipulated that, if called to testify, Officer Reid would say that he arrested Dennis Posedel and that Mike Sperry identified Dennis Posedel as the man with the white shirt that threatened him with a pickaxe. It was also stipulated that Officer Hanna would testify he was told by Keith Herberger that the knife had been confiscated from the man in the white shirt.

The court found the defendant guilty of both counts of aggravated battery. Trial counsel's timely filed post-trial motion challenging only the sufficiency of the evidence was later supplemented by private counsel hired by the defendant. The supplemental motion alleged that trial counsel had rendered ineffective assistance of counsel with regard to her failure to allow the defendant to elect to testify or not and her failure to subpoena Dennis Posedel to testify. The supplemental post-trial motion was denied after a hearing.

At sentencing, the court acknowledged that it could impose a penalty of up to 10 years where "there's wanton cruelty and heinousness involved" and also due to the defendant's prior convictions. The court indicated it was reluctant to do so, however, since it felt that would almost be a punishment of the defendant for rejecting the pretrial

conference offer of probation. Yet, in light of the evidence, the court felt a term of probation would deprecate the seriousness of the offense. Accordingly, it sentenced the defendant to serve four years in the Department of Corrections.

The defendant first contends he was denied a fair trial when the court refused to consider as substantive evidence bartender Herberger's prior inconsistent statement to Officer Hanna that he took the knife away from the twin who had on a white shirt, that is, Dennis Posedel, the defendant's brother. Herberger's trial testimony was that he took the knife away from the twin who had on a red shirt, that is, Dale Posedel, the defendant. Herberger's trial testimony thus was corroborative of Diane Pietschman's testimony that the twin who had the knife taken away from him was the same one who threatened to kill her while holding a double-bladed axe. The court ruled that it could only consider the prior inconsistent statement as impeachment of Herberger's testimony. Pointing to section 115—10.1 of the Code, the defendant asserts the court's ruling was error and the cause must be remanded for a new, fair trial.

The defendant vigorously argued the substantive versus impeachment issue with the court at trial, albeit not specifically in terms of the provisions of section 115—10.1. Yet, the defendant failed to raise the issue in either his original or supplemental post-trial motion. The State argues the issue therefore may be considered waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186 (to preserve an issue for review "[b]oth a trial objection *and* a written post-trial motion raising the issue are required" (emphasis in original)).) Further, the State argues, the plain error exception should not be invoked where the evidence was not closely balanced nor was the alleged error so prejudicial that the accused has been denied a fair trial. (See *People v. Henderson* (1990), 142 Ill. 2d 258, 311; see also *People v. Davis* (1991), 208 Ill. App. 3d 33, 38-39.) The defendant argues that the evidence the court refused to consider as substantive related directly to the credibility of the State's prime witness, Diane Pietschman, on the identity of her attacker, and, had it been admitted as substantive evidence, it would have cast grave doubt over Pietschman's story. Thus, he argues, its nonadmission denied him a fair trial.

The defendant did not testify at trial, and the State agreed below that the case turned on Pietschman's testimony. As such, the defendant's guilt hinged entirely on his accuser's credibility, and no error should be permitted to intervene. (See *People v. Lawler* (1991), 142 Ill. 2d 548, 561-62; *People v. Emerson* (1983), 97 Ill. 2d 487, 502.) Because we believe the error alleged, if indeed it was error, reflects on

the fairness of the trial, we find the plain error exception is applicable, and we proceed to consider the merits of the issue. 134 Ill. 2d 615(a).

Section 115—10.1, which provides for the substantive admissibility of prior inconsistent statements in criminal cases, was added to the Code by Public Act 83—1042, effective July 1, 1984. Prior to that, the use of a prior inconsistent statement was limited to impeachment and was severely restricted when impeachment was sought by the party who had called the witness to the stand. If a prior inconsistent statement does not meet the requirements for substantive admissibility as spelled out in section 115—10.1, those same previous limitations still apply. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638, 642 (1984) (hereafter Steigmann article).

Section 115—10.1 provides in full:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement *either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding*, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1.

Because Herberger's prior inconsistent statement does not fall within the subsection (c)(1) category, nor was it written, signed, or otherwise recorded (subsection (c)(2)(C)), in order to be admitted as substantive evidence it had to meet the requirements of subsections (a), (b) and (c)(2)(B). That is, Herberger's prior statement had to be inconsistent with his testimony at trial, he had to be subject to cross-examination concerning the statement, and the statement had to narrate, describe, or explain an event or condition of which he had personal knowledge *and* the making of the statement had to be acknowledged by him at trial.

We find the statement meets all but the last of these requirements. Herberger did not acknowledge that he told Officer Hanna that he took the knife away from the twin wearing the white shirt. During direct examination, Herberger testified he was informed by Diane Pietschman that one of the twin brothers had a knife, but that it was the brother who had the red shirt, not the one who was in the white shirt. On further direct examination, Herberger testified he did "not exactly" remember telling Officer Hanna that the man he took the knife away from had on a white shirt, explaining "[it was] so long ago, you know." He did remember talking with Officer Hanna that night; he agreed that at the time he talked with Officer Hanna his memory was fresh because the incident had just occurred. He also agreed that "what [he] told [Officer Hanna] then was the truth." Nonetheless, Herberger was unable to acknowledge his prior statement because he could "not exactly" remember what it was, and his recollection at trial was that it was the twin in the red shirt who had the knife.

■■ ■ "Substantive evidence is evidence which is 'adduced for the purpose of proving a fact in issue, as opposed to evidence given for the purpose of discrediting a witness *** or of corroborating his testimony.' (Black's Law Dictionary 1281 (5th ed. 1979).)" (*People v. Redd* (1990), 135 Ill. 2d 252, 302.) Where a prior statement fails to meet the requirements of section 115—10.1, it is not admissible as substantive evidence. (*Redd*, 135 Ill. 2d at 313-14.) Because the defendant was affirmatively damaged, as opposed to being merely disappointed, by his witness Herberger's testimony that the possessor of the knife wore a red shirt, he was entitled to have Herberger's prior inconsistent statement to Officer Hanna admitted to impeach Herberger's credibility. Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1 ("Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement *** fails to meet the criteria set forth herein"); Steigmann, 72 Ill. B.J. at 642.

■ Insofar as defendant's argument here appears to suggest that the trial court erred by not exercising its discretion to determine whether Herberger's prior inconsistent statement met the requirements set forth in section 115—10.1 (see *People v. Flores* (1989), 128 Ill. 2d 66, 87-88; *People v. Hastings* (1987), 161 Ill. App. 3d 714, 719), it is clear that particular statute was never mentioned during the closing-argument colloquy between the trial judge and defense counsel concerning counsel's position that the statement could be admitted substantively. The trial judge is presumed to know the law, however (*People v. Cheung* (1980), 83 Ill. App. 3d 1048, 1055), and, even if we were to consider whether defense counsel rendered ineffective assistance by failing to argue the issue based specifically on section 115—10.1, we would have to conclude defendant nonetheless received the effective assistance of counsel.

In light of our above conclusion that the prior inconsistent statement was not admissible as substantive evidence, the defendant has failed to show he was prejudiced by counsel's performance under the *Strickland* test. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65; *People v. Steidl* (1991), 142 Ill. 2d 204.) Under *Strickland,* a defendant seeking to establish a claim of ineffective assistance of counsel must prove both that his attorney "made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that it is reasonably probable that those errors so prejudiced the defendant as to deprive him of a fair trial. (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) "A court deciding a claim of ineffective assistance of counsel may advance directly to the second part of the *Strickland* test, and if it finds that the defendant was not prejudiced by the allegedly incompetent conduct of his attorney, the court may rule on the claim without first finding that the attorney's conduct constituted less than reasonably effective assistance." *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 397.

In sum, we conclude the court did not err when it refused to consider Herberger's prior inconsistent statement as substantive evidence.

The defendant next contends he was not proved guilty beyond a reasonable doubt of battery, arguing the identification evidence was conflicting, Diane Pietschman's testimony was not credible and the court based its ruling on a finding of fact which was not supported by the evidence.

On review of the sufficiency of the evidence to support a conviction, the function of this court is not to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Waldron* (1991), 208 Ill. App. 3d 234, 236.) Rather, in order to preserve the fact finder's role as weigher of the evidence, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Steidl* (1991), 142 Ill. 2d 204, 226; *Collins*, 106 Ill. 2d at 261; *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The defendant's argument is that Diane Pietschman's identification of him as her attacker was called into serious question by the contradictory evidence of witnesses Herberger and Sperry that they observed his white-shirted brother, not him in the red shirt, gripping a pickaxe with both hands like a baseball bat while standing in the doorway of the lounge. He points out the court resolved this seeming conflict by concluding, without evidentiary basis, that there were two different axes, one used by each of the Posedel brothers, and that it was error for the court to have reached that conclusion without any evidentiary basis.

We agree that a trier of fact may not make an affirmative finding that is unsupported by any evidence (see *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 86), but the record here does not support the defendant's contention that the court's conclusion was not based on any evidence. The record shows Diane Pietschman, Keith Herberger and Michael Sperry each described the axe held, respectively, by the red-shirted defendant and his white-shirted brother. The court's reception of the oral testimony of these three witnesses was supplemented with its visual reception of those witnesses' manual demonstrations performed in explanation of the appearance of the respective axes. Those demonstrations caused the court to conclude there were two different types of axes involved:

> "THE COURT: The ones describing the pick ax, had their hands approximately two feet apart, did a circle with their fingers, and did a tubular out from each—from the center moving their hands outward, which is a pretty graphic description of a pick ax. Diane, I still don't the—
>
> MS. GROHS: Pietschman.
>
> THE COURT: —Pietschman, testified to a two edged ax, she did a convex or—
>
> MR. QUILTY: Depending on which angle you're looking at.

THE COURT: Depends on what angle you're looking at—semi-circular movement on each side with her hands, at a distance of approximately a foot or so, which was a very accurate description of a double headed ax."

In response to defense counsel's argument that she believed the witnesses were describing the same axe, the court stated:

"THE COURT: Well, just so the record is clear, their physical descriptions with their hands were not at all identical. Okay?

A pick ax with a narrow, in essence, although they didn't say it, tubular projection on each side, to a point, as opposed to double headed ax, is two different kinds of instrumentalities that I think you can take [notice of] everyday experience of in these kinds of items. And their descriptions were just totally different on each one of them."

This type of visual demonstration in explanation of testimony amounts to a form of demonstrative evidence which "can convey a relevant firsthand sense impression to the trier of fact, as opposed to those which serve merely to report the secondhand sense impression of others." (McCormick, Evidence §212, at 524 (2d ed. 1972).) The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the fact finder (*People v. Steidl* (1991), 142 Ill. 2d 204, 226) as is the resolution of conflicts in the evidence (*People v. Lippert* (1984), 125 Ill. App. 3d 489).

The court's resolution of the seeming conflict in the evidence, which defendant characterizes as a "dilemma," was properly based on the evidence it heard and saw at trial. Evidence of Herberger's and Sperry's observance of Dennis Posedel wearing a white shirt and wielding a pickaxe was not specifically placed in a time frame which would negate the reliability of Diane Pietschman's positive identification of the defendant as her assailant both in court and in the photographic lineup after the incident occurred. Herberger stated only that he observed Dennis Posedel with the pickaxe at a time which was *before* he knew Diane Pietschman had been hurt. As such, Herberger's and Sperry's testimony does not foreclose the possibility that the defendant battered Diane Pietschman prior to or subsequent to his brother being seen with a pickaxe. Diane Pietschman had ample opportunity to view the defendant while he was in the bar, prior to the attack upon her, during the attack when she saw him in the doorway under "well lit" conditions and when she turned and saw him chasing her after he threatened to kill her.

The testimony of a single witness can be sufficient to support a conviction if the witness observed the accused under conditions permitting a positive identification. (*People v. McNutt* (1986), 146 Ill. App. 3d 357; *People v. Chew* (1987), 160 Ill. App. 3d 1082.) We conclude the defendant was proved guilty beyond a reasonable doubt of battery.

Lastly, the defendant claims his four-year sentence was the result of an abuse of the court's discretion and should be reduced to the minimum sentence of two years for a Class 3 felony. He points out the court was willing to go along with a plea agreement that did not include a prison sentence, but then, after he exercised his right to trial, it considered imposing an extended prison term. Defendant claims the court also took into consideration inappropriate factors in fashioning the four-year sentence. Specifically, it considered the nature of the weapon used where that factor was already a necessary element of the offense charged, and it considered that his conduct was brutal and heinous.

■ Initially, we reject the State's implication that this issue may be moot due to the passage of time. (See *In re D.G.* (1988), 176 Ill. App. 3d 658 (sole issue of whether the 30-day jail term imposed as part of minor's dispositional order was appropriate found moot where minor had already served the period of detention).) When the only relief sought is to vacate a sentence, the question of the validity of its imposition becomes moot when the sentence has been served. (*People v. S.L.C.* (1986), 115 Ill. 2d 33, 39.) Defendant here has sought more than just relief from his sentence. Further, four years have not elapsed since sentence was imposed on December 30, 1988, and there is no evidence the defendant has received the good-time credit provided for in section 3—6—3 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1003—6—3(a)(2)). Accordingly, we proceed to address the merits of the issue.

It is well settled that a trial judge's sentencing decisions are entitled to great deference and weight (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154) since he is in a better position than a reviewing court to fashion an appropriate penalty after firsthand observation of the defendant and consideration of such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age (*People v. Streit* (1991), 142 Ill. 2d 13, 19; *Perruquet*, 68 Ill. 2d at 154) along with his consideration of other factors such as the defendant's history, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence (*People v. Goodwin* (1991), 208 Ill. App. 3d 829, 831). Ac-

cordingly, even though a reviewing court may have weighed the sentencing factors differently, its power to alter or reduce a sentence pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) is limited to those cases in which a trial court has abused its discretion. *Streit*, 142 Ill. 2d at 19; *Perruquet*, 68 Ill. 2d at 154; *People v. Jenkins* (1991), 209 Ill. App. 3d 249, 263.

We find the trial court did not abuse its discretion in sentencing the defendant to a four-year term of imprisonment. Before the defendant's jury trial commenced, the details of the abandoned plea negotiations were spread of record. In light of the potential evidentiary problems the State suggested it might encounter in prosecuting the cause, the court indicated it would accept a straight plea of guilty to the felony with no sentence to the Department of Corrections, despite the defendant's prior felony conviction, or, alternatively, it would accept a plea involving time in the Lake County jail although its preference would be for the felony conviction. It also indicated that with the defendant's prior conviction, and considering the nature of the instrumentality allegedly used, an extended term would be available if there was a trial and conviction.

At sentencing, the court stated that, although it had expected that perhaps the State might not have sufficient evidence, it was clear to it after having heard the evidence that the defendant did have a axe and that he committed the offense charged. Consequently, in light of the violent nature of the crime and the defendant's prior conviction, and despite the "tremendous discount" the defendant was offered to plead guilty, the court indicated the defendant was facing the possibility of a 10-year term. It felt the defendant had alcohol and attitude problems, that his remorse was belated, that "the odds" and the structure of intensive probation were not on his side and that the defendant was "going to be back in here and he's going to be doing 10 years in the joint. I'm not sure what is not only best for the society but best for him at this point."

When the trial judge asked the defendant if he understood the point he was trying to make, the defendant's response showed he did not. Accordingly, the court stated:

"THE COURT: I'll put it in real simple language, all right? You have been to the joint before. You've got significant prior contacts with the justice system. I have found you guilty of a violent act with a weapon that but for luck, somebody could have been dead. I can—there's no court in the world that would do anything but affirm me if I decided you ought to get 10 years for that. On the other hand, the reason you're facing that

10 years is because you were stupid in that you didn't accept a sweetheart deal offered to you by the State which involved not going to the penitentiary. Do you remember that?

THE DEFENDANT: Yes, I do.

THE COURT: And while I am justified in sending you to the penitentiary and I'm not bound or held to anything about that agreement, there's just a little part of me that feels that it sort of would be giving you 10 years for stupidity rather than 10 years for doing this because you had a chance at no penitentiary for it, and what I'm basically saying to your lawyer is my problem is because of that. I would have a tendency to give you less than the 10, something 5 or below and have it done with even though I ought to give you 10 based on your record; but if I give you—if I gave you intensive [probation] and you do six months on that and you come back for any—spitting on the sidewalk, I'd send you for 10."

A sentence will be set aside where the sentencing judge's remarks make it evident that the sentence being imposed is due, at least in part, to the fact that the defendant did not plead guilty and, instead, exercised his constitutional right to trial. (*People v. Ward* (1986), 113 Ill. 2d 516, 526; *People v. Moriarity* (1962), 25 Ill. 2d 565, 567.) However, the mere imposition of a sentence which is greater than that discussed at a pretrial conference does not support the inference that the heavier sentence was imposed as a punishment for demanding trial (*People v. Beacham* (1980), 87 Ill. App. 3d 457, 471; *People v. Busch* (1973), 15 Ill. App. 3d 905, 907); such a claim must clearly be established by the evidence. *Busch*, 15 Ill. App. 3d at 907.

■ Rather than punishing the defendant for going to trial, it is clear from the court's remarks that it was trying to construct a reasoned and appropriate sentence from the range of the minimum and maximum dispositions available to it: intensive probation on the one hand and an extended term on the other. The court's remarks show it believed that if it gave the defendant a term of intensive probation and he violated its terms, he would likely be sent to prison for 10 years. In the alternative, some prison terms less than 10 years in length perhaps would ensure the defendant would not have to face imposition of a maximum term. With 20-20 hindsight, the defendant well might agree that he was "stupid" to forego the "sweetheart deal" offered before trial. Based on this record, however, we find his four-year sentence to the Department of Corrections was not in the least meant by the court to be a punishment of him for exercising his right to a jury trial. Rather, it was a sentence which reflected the balance

struck by the court between the seriousness of the crime and the defendant's rehabilitative potential.

■■ We find meritless the defendant's further contentions that the court was wrong to consider the possibility of an extended term based on the nature of the weapon used because that factor was already an aggravating factor for purposes of the charge and in finding that his "brutal and heinous" conduct supported an enhancement of the sentence.

In the first place, the four-year sentence imposed is not an extended term. An extended term for a Class 3 felony would be not less than 5 and not more than 10 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(5).) Secondly, the defendant concedes that his prior criminal record alone qualified him for an extended term. (See Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—2(b), 1005—5—3.2(b); *People v. Thomas* (1988), 168 Ill. App. 3d 113, 118.) Consequently, the court properly could consider a 10-year term as the high end of the sentencing range it was considering.

Third, as to the nature of the weapon used, the general rule is that "a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense, absent a clear legislative intent to accomplish that result." (*People v. Ferguson* (1989), 132 Ill. 2d 86, 97.) Although judgments of conviction were entered by the court here on both counts of aggravated battery, only one four-year sentence was entered, and we have above vacated the defendant's conviction of aggravated battery based on the use of a deadly weapon. The remaining conviction of aggravated battery is based upon great bodily harm, and the court in its discretion could properly consider that the defendant's use of the axe threatened even more serious harm than the harm actually inflicted. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1).

Fourth, the court's consideration of the heinous nature of the defendant's conduct was not improper. As noted above, the sentence imposed was not an extended term and, thus, the defendant's reliance on *People v. Lucas* (1989), 132 Ill. 2d 399, 444-47, in arguing his conduct was not brutal and heinous is misplaced. Further, this court has already determined that a sentencing court's consideration of brutal and heinous conduct is not disallowed simply because the sentence it is fashioning is a nonextended term. See *People v. Jorgensen* (1989), 182 Ill. App. 3d 335, 342-43 (agreeing with *People v. Butts* (1985), 135 Ill. App. 3d 132, 135, in that court's express rejection of the conclusion in *People v. Killen* (1982), 106 Ill. App. 3d 65, that section

5—5—3.2(b)(2) factors may be considered only to impose an extended term); accord *People v. Compton* (1990), 193 Ill. App. 3d 896, 901.

In sum, we find the four-year sentence imposed was the result of the exercise of sound judicial discretion and no alteration is warranted.

The judgment of the circuit court of Lake County finding the defendant guilty of the offense of aggravated battery by use of a deadly weapon is vacated; its judgment and sentence finding him guilty of aggravated battery causing great bodily harm is affirmed.

Judgment vacated in part and affirmed in part.

INGLIS and NICKELS, JJ., concur.