THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMY LEE WASHINGTON, Defendant-Appellant.

Second District No. 2—87—1039

Opinion filed June 21, 1989.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Jimmy Lee Washington, was found guilty in a jury trial in the circuit court of Kane County of the offense of possession of a stolen or converted motor vehicle in violation of section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)), a Class 2 felony (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)). He was subsequently sentenced to a four-year term of imprisonment.

Three issues are presented for review: (1) whether section 4—103(b) of the Vehicle Code is constitutional; (2) whether the giving of a jury instruction defining "converted property" combined with the failure to instruct the jury on the definition of "theft" denied defendant a fair trial; and (3) whether defendant's *pro se* assertion after trial of ineffective assistance of his trial counsel entitles him to remandment for another post-trial hearing on that assertion with appointed counsel other than his trial counsel.

Evelyn Smith and her mother, Ethel Smith, testified that on December 14, 1986, at about 4:45 p.m., they parked a 1979 Oldsmobile Cutlass owned by Evelyn on a side street near 936 West 53rd Street in Chicago, where they were visiting Ethel Smith's aunt. Upon returning to the location where the car was parked approximately an hour later, they discovered the car was missing and contacted the police. Both witnesses testified that the car was locked after they parked and that neither had given anyone permission to take the car. Evelyn Smith next saw her car the following morning in Aurora, after having been contacted by the Aurora police. At that time she discovered that the lock had been pulled out of the trunk, the glove compartment had been pulled out, the ignition had been pulled out, and wires were hanging from the steering column.

Daniel Booth, a patrolman with the Aurora police department, testified that, while on duty on December 15, 1987, at approximately 1:30 a.m., he spotted a 1979 Oldsmobile Cutlass parked with the front end jacked up and the hood open north of 9 South West Street in Aurora. According to Booth, defendant was seated behind the steering wheel and two other individuals, later identified as Robert Moore and Willie House, were outside the car. Booth, believing the car to be disabled, approached the car. Defendant told him his gas pedal was sticking, causing the engine to overheat. After advising the men that the car should not be driven, Booth started to leave, at which point he observed that the lock was missing from the trunk of the car. He copied the license plate number. Booth then drove around the block and determined by radio communication that the vehicle had been reported

stolen. Booth returned to where the car was parked. He saw the three men entering the house at 9 South West Street. Booth followed them into the house. Shortly thereafter, Booth was joined by several other officers, and defendant, Moore, and House were placed under arrest.

The State introduced into evidence a written statement given by defendant to Aurora police in which he indicated that on December 14, 1986, without permission he took a 1979 Oldsmobile Cutlass which he had found between Michigan and Wabash on 44th Street in Chicago, with its keys in the ignition and the engine running. In his statement, defendant stated, "I just took [the car] for transportation I was going to give it back, take it back to Chicago where I got it from." He further stated that Moore and House did not know the vehicle was stolen. He also stated that a person named "John" drove to Aurora with him.

In his testimony at trial, defendant offered a different account of the events preceding his arrest. According to defendant, on the afternoon of December 14, 1986, he was with Denise Lawson at her residence. Between 7 p.m. and 8 p.m. he left to pick up his and Denise's daughter, returning at about 10 p.m. He then left again accompanied by a friend, Peewee Bates, in Bates' car. According to defendant, while headed toward 45th and Michigan, they came upon Johnny Fleming, defendant's cousin, and an unidentified individual in the Cutlass. Defendant and Bates caught up with Fleming, and defendant got into the back seat of the Cutlass. The three agreed to drive back to Aurora. In Aurora they stopped to meet Twanda Harris, and eventually ended up at 9 South West Street. Johnny Fleming left in another car. Later, defendant, Moore, and House went outside and tried to fix the car. Defendant testified that he never drove the car or knew it was stolen.

Defendant testified that the version in his written statement—that he took the car after finding it with the keys in the ignition—was suggested by police during questioning. According to defendant, he was told that if he signed the statement, Moore and House would be released. A certified copy of defendant's prior conviction in 1982 of robbery was admitted into evidence on rebuttal.

Denise Lawson testified that defendant was with her on December 14, that he left about 7 p.m., and that he returned and left again at around 10 p.m.

Twanda Harris testified that defendant, Johnny Fleming, and another individual arrived at her residence in Aurora around midnight on December 14 in a 1979 Oldsmobile Cutlass driven by Fleming and

that she joined them. After making several stops, they arrived at the location where defendant was later arrested. No one ever stated that the car was stolen.

■ Defendant, relying on the appellate court decision in *People v. Bryant* (1988), 165 Ill. App. 3d 996, 520 N.E.2d 890, first contends that section 4—103(b) of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)) is unconstitutional because an amendment increasing the penalty for possession of a stolen or converted motor vehicle was not reasonably designed to remedy the evil which was the object of the amendatory act and because it allows a lesser included offense to be punished more severely than the greater offense.

By the time of oral argument in this case, the appellate court decision in *Bryant* had been reversed by our supreme court, and defendant waived further argument on this issue.

In *People v. Bryant* (1989), 128 Ill. 2d 448, the supreme court upheld the constitutionality of section 4—103(b), rejecting the same challenges advanced by defendant in this case. (See also *People v. Ambrose* (1988), 171 Ill. App. 3d 87, 525 N.E.2d 536; *People v. Carlyle* (1987), 159 Ill. App. 3d 964, 513 N.E.2d 61; *People v. Smith* (1987), 159 Ill. App. 3d 156, 512 N.E.2d 71; *People v. Larson* (1987), 158 Ill. App. 3d 135, 511 N.E.2d 191.) Thus, we decide this issue adversely to defendant.

Defendant next maintains that the jury was never called on to determine if the vehicle was the subject of a theft because the jury was never instructed on the elements to be proved in a theft, which include the intent to permanently deprive. Defendant further contends that the word "converted" in section 4—103(a)(1) is not defined in the statute and that the trial judge erroneously instructed the jury on the definition of "converted" by using the Black's Law Dictionary definition.

The State responds that the phrase "stolen property" which is contained in section 4—103(a)(1) was defined as "property over which control has been obtained by theft" in an instruction given by the court. This, the State contends, is sufficient to imply an unlawful taking, and theft need not have been defined, as all the elements of theft are not elements to be proved in a prosecution under section 4—103(a)(1) of the Vehicle Code. The State further contends that the instruction defining the term "converted" was proper.

The circuit court gave the Illinois Pattern Jury Instructions defining possession of a stolen or converted motor vehicle and delineating the issues presented by the charge of possession of a stolen or converted motor vehicle. (Illinois Pattern Jury Instructions, Criminal,

Nos. 23.14, 23.15 (2d ed. 1981) (hereinafter IPI Criminal 2d).) In connection with the proposition, required to be proved by the State, "[t]hat the defendant knew the motor vehicle was stolen or converted[]'' (IPI Criminal 2d No. 23.15), the court gave the pattern jury instruction defining "stolen property" as "property over which control has been obtained by theft." (IPI Criminal 2d No. 13.18.) Defendant argues that the jury should have been further instructed that theft requires an intent to permanently deprive the owner of property of its use or benefit. Defendant contends that the jury, not apprised that theft requires an intent to permanently deprive, may have believed his written statement that he intended to return the car where he found it, but nonetheless found him guilty.

■■ The failure to instruct the jury that theft requires intent to permanently deprive was not error as defendant was not charged with theft, but with knowing possession of a stolen or converted motor vehicle. There is no authority that intent to permanently deprive is an element of this offense, and defendant's mental state in this respect was irrelevant. It is true that a conviction under section 4–103(a)(1) may be predicated upon possession by the same individual who allegedly committed the theft of the motor vehicle (see *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 479-80, 488 N.E.2d 1374) and, in such a case, proof of that person's mental state inconsistent with that required for theft would prevent a conviction under section 4–103(a) based on possession of a stolen motor vehicle. (See *People v. Cramer* (1981), 85 Ill. 2d 92, 100, 421 N.E.2d 189.) In the instant case, however, all the evidence submitted by both defendant and the State indicates that someone other than defendant took Evelyn Smith's car near 53rd Street and defendant later obtained possession, either, as his written statement indicates, by finding it on 44th Street, or when he was picked up by Johnny Fleming. Whether defendant intended to permanently deprive the car's owner of its use or benefit has no bearing on the car's character as stolen property. While, as defendant contends, the jury could have believed his statement that he intended only to use the car for transportation and to return it where he found it, this would not be exculpatory in view of the evidence that the car was already stolen at the time he obtained possession.

■■ In instructions, a term which is employed in a general, nontechnical context need not be defined as long as nothing in the instruction obscures its meaning. (*People v. Hicks* (1987), 162 Ill. App. 3d 707, 713, 516 N.E.2d 807.) Thus, applicable here, where the term "theft" was used merely to aid the jury in understanding the term

"stolen property," are the cases, such as those cited by the State, holding that in certain contexts, because "theft" is a word in common usage generally meaning the unlawful taking of property, it is not necessary to give an instruction specifically defining the term theft. See *People v. Johnson* (1981), 98 Ill. App. 3d 228, 234, 424 N.E.2d 610; *People v. Browry* (1972), 8 Ill. App. 3d 599, 604, 290 N.E.2d 650; *People v. Parks* (1971), 133 Ill. App. 2d 348, 351, 273 N.E.2d 162 (no error in failing to instruct as to definition of theft in prosecution for burglary).

Defendant also contends that the circuit court improperly instructed the jury as to the definition of converted property. The court instructed the jury that "[t]he phrase 'converted property' means property over which unauthorized control has been obtained by the act of actually appropriating the property of another to his own beneficial use and enjoyment." There was no IPI definition of the term at the time, and the non-IPI instruction was obtained from Black's Law Dictionary. Defendant maintains in his reply brief, citing *People v. Sergey* (1985), 137 Ill. App. 3d 971, 485 N.E.2d 506, that, in the context of section 4—103(a)(1) of the Vehicle Code, conversion requires an intent to permanently deprive the owner of his property and that the failure to so instruct the jury requires reversal.

■■ In *Sergey*, in considering the defendant's claim that as a matter of law his acts did not constitute conversion, this court noted, *inter alia*, the absence of an intent to permanently deprive the owner of his vehicle in finding that the defendant, who had taken the vehicle himself under the mistaken belief that he had the owner's permission, had not converted the vehicle. This court did not state, however, that in all instances such an intent must be present to sustain a conviction under section 4—103(a)(1), its decision being limited to the particular factual situation of that case. *Sergey* is not authority that a jury must be instructed as to intent to permanently deprive. Indeed, contrary to defendant's contention that the jury need be so instructed, the most recent supplement to the Illinois Pattern Jury Instructions, Criminal, defines "converted" in the context of section 4—103 as follows:

> "Property has been 'converted' if a person lawfully entitled to possession of that property has been wrongfully deprived of it." (IPI Criminal 2d No. 23.15A (Supp. 1989).)

The non-IPI instruction given is not substantially different from this new instruction. Hence, defendant's contention is without merit.

Defendant's final contention is that because, following trial, he expressed dissatisfaction with his trial counsel's handling of his case, noting counsel's failure to contact certain alibi witnesses suggested by

him, he should have had other counsel appointed for him in presenting this claim below and this cause should be remanded for a new post-trial hearing with new counsel appointed to investigate and to present this claim. Defendant primarily relies on the decision of our supreme court in *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E. 2d 1045.

The State responds that the record shows that defendant made a similar claim during pretrial proceedings and the trial court said defendant should have the witnesses present on the day of trial. The State further points out that defendant was released on bond and was able to contact these witnesses himself.

The record reveals that during a status hearing on September 10, 1987, defendant indicated he wanted to hire a private lawyer and would be talking to the lawyer before the trial was to begin on September 14. Defendant also informed the court that he had certain witnesses whom his present appointed counsel had not contacted even though they were trying to reach the attorney. He identified the witnesses as his three-year-old daughter, Peewee Bates, Robert Moore, a codefendant whose case had been dismissed, and Denise Lawson. Defendant's counsel was ordered to subpoena Bates. Defendant had no specific address for Moore who, defendant said, lived in Aurora. The court also told defendant to bring the witnesses to court on September 14 and defense counsel could talk with them and they could testify.

Defendant did not secure new counsel. The next indication of defendant's dissatisfaction with his trial counsel was in a letter to the court filed October 7, following his trial, wherein he stated, without elaboration, that his counsel handled his case improperly. Further, on October 22, following the denial of his post-trial motion and at the end of his sentencing hearing, defendant informed the court that his counsel failed to contact alibi witnesses Johnny Fleming, Robert Moore, and defendant's sister, Patricia Washington, the latter two being now present in court. He informed the court that Fleming had been in the Cook County jail and his counsel failed to talk with him. Essentially, defendant related that these witnesses could have testified that defendant did not know the car was stolen and that Fleming drove the car. Defendant's counsel responded that he had five letters written to defendant while the case was pending germane to his work on the case and notes of interviews with witnesses which relate to the allegations and what he did with the information provided. These documents are not a part of the record on appeal. .

In *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E. 2d 1045, the defendant, following trial, presented *pro se* a motion alleging ineffec-

tive assistance of his trial counsel based on counsel's failure to present an alibi defense and to contact an alibi witness suggested by defendant. Our supreme court, upon the agreement of appellate counsel for the State and the defendant that counsel should have been appointed below to represent defendant on this allegation, remanded for a new hearing on the motion with new counsel appointed for defendant. (*Krankel*, 102 Ill. 2d at 189, 464 N.E.2d at 1049.) The holding in *Krankel* has been interpreted by the appellate court not to establish a *per se* rule that all *pro se* motions for a new trial by defendants alleging ineffective assistance of counsel mandate appointment of new counsel to assist in the motion irrespective of the basis of the motion and in the absence of a request for new counsel. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 75, 475 N.E.2d 237; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138-39, 474 N.E.2d 466; see also *People v. Generally* (1988), 170 Ill. App. 3d 668, 676, 525 N.E.2d 106.) Rather, the trial court should examine the factual matters underlying the defendant's claim, and, if the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed. Only if the allegations show possible neglect of the case for which counsel could undertake an independent evaluation of defendant's complaint and present the matter to the court should new counsel be appointed. *Generally*, 170 Ill. App. 3d at 676, 525 N.E.2d at 111; *Jackson*, 131 Ill. App. 3d at 139, 474 N.E.2d at 474-75.

■ In the case at bar, defendant did not request counsel to assist him and the record does not reveal a neglect of defendant's case. It is readily ascertainable from the record that counsel did not, as a general matter, neglect defendant's case. Moreover, we do not view defendant's allegations with respect to counsel's failure to contact particular witnesses as constituting neglect under the circumstances of this case. The matters on which these witnesses would purportedly testify, defendant's lack of knowledge that the vehicle was stolen and his status as a passenger in the vehicle, rather than as a driver, are cumulative to his testimony and that of Twanda Harris, and these witnesses are not properly characterized as alibi witnesses. The proposed witnesses were all friends or relatives of defendant and, under the facts of the case, would have added little to defendant's defense. Furthermore, as the direct testimony of these witnesses could have been of such limited value to the defense, the possible dangers in subjecting these witnesses to cross-examination would be a strategic concern militating against presentation of their testimony. Defendant's trial counsel did represent that he did interview witnesses that relate to the allegations by defendant. Thus, defendant's allegations are on their face

insufficient to show possible neglect of defendant's case but rather show decisions by counsel well within the bounds of proper trial strategy. Remanding for a new hearing on defendant's claim with new counsel is not warranted in this circumstance. *Generally*, 170 Ill. App. 3d at 676-77, 525 N.E.2d at 111.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT, P.J., and LINDBERG, J., concur.