# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Jolly, 2013 IL App (4th) 120981**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN WILLIE JOLLY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0981 |
| Filed | October 4, 2013 |
| Modified upon denial of rehearing | December 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant's conviction for unlawful delivery of a controlled substance was remanded for a *Krankel* hearing limited to a preliminary investigation as to whether a full evidentiary hearing was necessary to consider defendant's *pro se* claims of ineffective assistance of counsel, the procedural errors made by the trial judge, including his reliance on defense counsel's performance in other cases, were harmless beyond a reasonable doubt, and the denial of defendant's request for the appointment of new counsel was upheld, especially in the absence of any well-founded claim of ineffective assistance of counsel. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-CF-239; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Martin J. Ryan, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | |
| | Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. |
| | Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    On July 19, 2012, this court remanded this case to the trial court " 'for the limited purpose of allowing the trial court to conduct the required preliminary investigation' to determine if a full evidentiary hearing" into defendant John Willie Jolly's *pro se* claims of ineffective assistance of counsel should be held. *People v. Jolly*, 2012 IL App (4th) 110033-U, ¶ 14 (quoting *People v. Moore*, 207 Ill. 2d 68, 81, 797 N.E.2d 631, 640 (2003)). On September 26, 2012, the court held a hearing pursuant to this court's order and ruled it would not appoint new counsel for defendant because "each of the allegations lacks merit and/or pertains to trial strategy." Defendant appeals, arguing the trial court's denial of defendant's request for new counsel must be reversed where the court "conducted a quasi-evidentiary hearing at which the State presented testimony and argument" instead of a preliminary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). We affirm.

¶ 2                    I. BACKGROUND

¶ 3    On March 19, 2010, the State charged defendant with unlawful delivery of a controlled substance within 1,000 feet of a church (count I) (720 ILCS 570/407(b)(2) (West 2008)) and unlawful delivery of a controlled substance (count II) (720 ILCS 570/401(d)(i) (West 2008)). On July 19, 2010, the State dismissed count I and proceeded only on count II.

¶ 4    At defendant's trial, the State called Robbie Gunn. Gunn testified he had a drug problem, which started when he was 17. He was 45 years old at the time of trial. Gunn sold drugs, stole things, and did whatever else was necessary to acquire drugs. He testified he was a convicted felon, had multiple convictions for delivery of a controlled substance, and had served time in prison.

¶ 5    Detective Raisbeck of the Bloomington police department arrested Gunn on September 22, 2009, for delivery of heroin or crack in June 2009. Gunn testified he was selling drugs

to get drugs. Gunn was never charged for this offense. After Gunn assisted the police as a confidential source, Detective Raisbeck was instrumental in getting a pending misdemeanor against Gunn dismissed.

¶ 6        On March 3, 2010, Gunn told Detective Raisbeck someone named "Bud" would sell Gunn cocaine. Gunn identified defendant as "Bud." On March 18, 2010, Gunn met with Detective Raisbeck again and called defendant in the detective's presence. Gunn recognized defendant's voice on the phone. Gunn told defendant he had "200" to spend, but defendant said he only had a "50" but would try to get the rest. Gunn called defendant back 10 or 15 minutes later. Defendant said he still only had the "50." Defendant said he would bring it to Gunn.

¶ 7        Gunn went to their normal transaction spot on Mulberry. Detective Raisbeck gave Gunn $50. At the meeting place on Mulberry, defendant drove up and lowered the passenger side window of his vehicle. Gunn gave defendant $50, and defendant spit the drugs out of his mouth and gave them to Gunn. Defendant said he would try to get "150" more. After defendant drove away, Detective Raisbeck came and got the drugs from Gunn. Gunn stated Detective Raisbeck gave him some money for helping him.

¶ 8        On cross-examination, Gunn testified he needed money because he did not have a job and needed funds to live. Gunn was not wearing any kind of surveillance equipment during the transaction with defendant.

¶ 9        Detective Sergeant Kenneth Bays testified he was part of the surveillance detail watching defendant. After the controlled buy, Sergeant Bays stopped at a stop sign, and defendant stopped behind him. He then moved out of the way as the police "takedown units" got behind defendant. The "takedown units," three police cars with lights and sirens on, attempted to stop defendant but he refused to stop. Instead of stopping, defendant accelerated his vehicle. After a short chase, Sergeant Bays told the officers to stop the pursuit because they knew who defendant was and did not want to endanger the public. Defendant was apprehended about 90 seconds later.

¶ 10       On cross-examination, Sergeant Bays testified the police cars pursuing defendant did not have oscillating police lights on the roofs of the vehicles and were not "black and whites."

¶ 11       Patrol sergeant Mike Gray, who was a detective in the vice unit at the time of defendant's arrest, testified he observed Gunn from the time he left the presence of Detective Raisbeck until the transaction with defendant. Sergeant Gray identified defendant as the driver of the vehicle that stopped for Gunn. Defendant leaned toward Gunn, who was on the passenger side of defendant's vehicle. Sergeant Gray saw movement from defendant's shoulders and arms but did not actually see the hand-to-hand transaction. After defendant's car pulled away, Gunn met with Detective Raisbeck.

¶ 12       Officer Rick Beoletto testified he was a passenger in an unmarked Camaro driven by Officer Chambers on the day in question. The police lights on the vehicle are located at the roof line on the inside of the vehicle. The officers were instructed to stop a red vehicle with a white top. Officer Chambers activated the emergency lights on the Camaro. The driver of the red vehicle looked in the rearview mirror and began "shaking his head in a no fashion." Officer Chambers then moved his vehicle out of the way so a different police vehicle with

a siren could pursue the red vehicle. After it became clear the vehicle was not going to stop, the police vehicles pulled over to the side of the road and started looking for items they thought were thrown from the suspect vehicle.

¶ 13    On cross-examination, Officer Beoletto stated the items thrown out the window of defendant's vehicle appeared to be shredded paper. He did not personally recover any of the items thrown out of the vehicle's window, nor could he identify what was thrown from the window.

¶ 14    Officer Brad Melton assisted in one of the "takedown cars." He was in uniform in an unmarked Chevrolet Impala, which had a light bar on the top of the windshield and lights in the grill on the front and back of the vehicle and a regular police siren. Officer Melton's vehicle was never directly behind defendant's vehicle. He testified he arrested defendant later while defendant was on foot. Defendant had a cell phone in his hand at the time of his arrest.

¶ 15    Officer Bill Wright testified he was asked by Detective Raisbeck to make a traffic stop on a maroon Buick with a white top. While pursuing the vehicle, he observed what appeared to be paper coming out of the driver's side of the vehicle. He and the other officers did not pursue the vehicle for safety reasons. Officer Wright testified he picked up some of the paper that was thrown from the car. The paper turned out to be torn United States currency. Officer Wright turned the pieces of currency he collected over to Detective Stephen Brown.

¶ 16    Detective Brown testified he was assigned to do presurveillance on defendant at an apartment complex. He observed defendant get into an older model red car with a white or off-white top. He testified he did not witness the other officers' pursuit of defendant's vehicle. He pulled up to where the officers had stopped and were trying to pick things up out of the road. Officer Wright gave Detective Brown what he picked up. Detective Brown documented and logged the evidence. Detective Brown compared the bits and pieces of currency picked up from the street with the photocopy of the money used by Gunn in the controlled buy. Detective Brown testified the serial numbers on the bills used in the controlled buy matched the pieces recovered on the street which had been thrown from defendant's car. Officer Melton provided Detective Brown with a cell phone recovered from defendant at the time of his arrest. The phone had the same number Gunn called to set up the controlled buy.

¶ 17    Detective Kevin Raisbeck testified he worked with Gunn as a confidential informant after arresting Gunn in June 2009 for selling drugs. He had given Gunn $400 so far for his help. On March 18, 2010, Gunn took part in a controlled buy for Detective Raisbeck. Before the buy, Detective Raisbeck searched the vehicle he and Gunn would be riding in and Gunn himself. They then placed a series of calls to defendant. The money to be used in the controlled buy was photocopied. Gunn called the number twice. Detective Raisbeck then drove Gunn to the 900 block of West Mulberry and dropped him off. Detective Gray was in the area to observe Gunn and the transaction. After Detective Gray told Detective Raisbeck the other vehicle had left, Detective Raisbeck met with Gunn, who gave him a bag of cocaine he had just purchased from defendant.

¶ 18    Detective Raisbeck testified he later interviewed defendant. Defendant said he did not stop for the officers because he thought they were thugs trying to make him stop. Defendant

claimed he could not hear the sirens because his music was too loud. As for the police lights, defendant said he could not see them because he did not have his glasses on. Defendant told Detective Raisbeck he did not remember throwing money out the window of his car.

¶ 19    Defendant chose not to call any witnesses.

¶ 20    The jury found defendant guilty of delivery of a controlled substance. Defendant was sentenced to 16 years in prison on September 27, 2010.

¶ 21    On October 25, 2010, defendant filed a *pro se* motion to reduce sentence, alleging his trial attorney, Harvey Welch, was ineffective because he did not file a motion to reduce defendant's bond, waived defendant's right to a speedy trial, failed to appear in court to represent defendant, failed to provide defendant access to discovery, and did not diligently seek a consultation with defendant to discuss trial strategy if trial became inevitable.

¶ 22    On November 23, 2010, defendant filed a *pro se* motion to amend the motion to reduce sentence. In that motion, defendant argued Welch was not thorough in his representation of defendant because he did not object to the State deeming itself an expert on currency, did not attack the credibility of the State's confidential source based on his criminal behavior and the fact he remained free to testify against defendant, did not object to the lack of testimony from forensic experts concerning the State's exhibits, and did not challenge the sufficiency of the evidence to convict defendant.

¶ 23    Defendant also argued Welch failed to object to Detective Raisbeck identifying defendant's voice on a recorded phone call from the jail and in a conversation with the State's confidential source, failed to object to the State's introduction of cocaine to the jury without anyone testifying it was cocaine, and failed to file a motion to suppress the marked money and cocaine.

¶ 24    On September 26, 2012, the trial court held a hearing pursuant to this court's order in *People v. Jolly*, 2012 IL App (4th) 110033-U, to determine whether new counsel needed to be appointed for defendant and a full evidentiary hearing held on defendant's allegations of ineffective assistance of counsel. Immediately prior to the start of the hearing, the court allowed defendant's then-lawyer, Ronald Lewis, to leave the courtroom. Defendant proceeded *pro se* at the hearing. The court noted Welch was available as a witness. According to the court:

"[Attorney Welch] is not appearing in any capacity, that being as an attorney for Mr. Jolly, but is present in the event that either the court, which I believe under the case law I would have the ability to go ahead and make inquiry of Mr. Welch as to some of the claims that were raised by Mr. Jolly, or, in the alternative, if the State wished to call Mr. Welch as a witness, that I would have the opportunity to hear from him as it relates to some of the assertions. When I say some, specifically those assertions relating to ineffective assistance of counsel from Mr. Jolly."

The court offered defendant the opportunity to exclude Welch from the courtroom. Defendant, thereafter, requested Welch not be present until he was questioned.

¶ 25    The trial court informed the parties of its preference to keep the hearing "as informal as possible recognizing that the ultimate determination is to make a good record so that that way not only does the trial court, but the Appellate Court, if necessary, will understand what

issues were raised and what rulings, then, were made by the court with respect to those issues that were raised." The court noted neither the Illinois Supreme Court nor the Appellate Court has defined a specific method for conducting this type of preliminary hearing.

¶ 26 The trial court first allowed defendant to explain why he believed his trial counsel was ineffective. Defendant told the court his trial counsel did not assert certain things during the trial, did not contest other things, and did not impeach State witness Robbie Gunn, who was a confidential source for the police. The court went through each of defendant's allegations of his attorney's alleged ineffectiveness. The court verified with defendant he had been allowed to explain or elaborate on all of his allegations of ineffectiveness.

¶ 27 The trial court then addressed the State and the following exchange occurred:

"[THE COURT]: What evidence does the State wish to submit, that being, if anything, when I say evidence, this is not a full evidentiary hearing, but does the State wish to rebut the assertions or claims, in essence, by Mr. Jolly in any manner at this time.

[THE STATE]: Yes, your Honor.

[THE COURT]: How so?

[THE STATE]: The State is prepared to address each of Mr. Jolly's claims of ineffective assistance of counsel if the court would wish to hear those.

[THE COURT]: Without any testimony, is that what you're indicating? You just want to go ahead and proceed to argument?

[THE STATE]: We also have Harvey Welch.

[THE COURT]: Okay. Let's go ahead and, as I suggested to Mr. Jolly previously, although I don't want to go ahead and prevent argument, let's go ahead and save argument for the appropriate time.

So at this time the State wishes to present some testimony is what you're indicating?

[THE STATE]: That's correct, your Honor.

[THE COURT]: Recognizing or understanding that some interchange between the trial court and trial counsel regarding the facts and circumstances is permissible, and I want to make sure, for purposes of the record, that whether or not the court conducts the inquiry of Mr. Welch or counsel, that being asks the inquiry of Mr. Welch, that, basically, it's an opportunity to Mr. Welch to address the assertions, this is not an evidentiary hearing. There will be no cross-examination of Mr. Welch.

Are you ready to call him?

[THE STATE]: Yes, your Honor.

[THE COURT]: All right. And I guess I should state, and this is while counsel and Mr. Jolly are present as well, the same applies to Mr. Jolly. There will be no cross-examination of Mr. Jolly. The purpose of this hearing is a preliminary examination. It's not a full evidentiary hearing. It affords both the court an opportunity to hear from both Mr. Jolly and Mr. Welch and then make a determination as to what, if any, further action is required."

Welch was then sworn to testify.

¶ 28    The trial court noted it could ask Welch questions regarding Jolly's allegations but the State instead would be eliciting information from Welch. Welch testified he had no specific recollection of missing any of Jolly's pretrial hearings but agreed the docket would be accurate as to whether or not he missed any hearing and who filled in for him. Welch denied telling defendant he was not prepared to proceed with his case at the time of trial. According to Welch, he was prepared to proceed with the case at the time of trial and had been given ample time to prepare his trial strategy.

¶ 29    With regard to Jolly's allegation Welch failed to consult with him about trial strategy and the approach Welch would take at trial, Welch testified:

"That's not true. The situation that confronted ourselves was that Mr. Jolly was given what I considered a terrible offer by the McLean County [S]tate's [A]ttorney's office. It was 14 years, as I recall, and the choices that I put to him were that he could accept that offer, he could plead guilty to open, or he could go to trial. Given the discovery we went over, I told him that we would most likely not prevail at trial, but that he was not being given much of a bargain for his plea, and so we discussed the discovery and we discussed the various options, and I told him that if he took the offer, that that would pretty much end matters. It is possible always to file other pleadings, but if you accept a plea and a specific sentence, I told him if he pled guilty to open, that would also limit his options to complain later on though not as severely as taking a totally consummated plea, and I told him that if he went to trial, there would be, obviously, then more opportunities to complain if that didn't turn out correctly, but, no, we had plenty of time to go over the discovery. This was a delivery case and it was fairly cut and dry, but those were the options that I presented to him, and he made the choice to go to trial."

¶ 30    With regard to his failure to file a motion to reduce bond, Welch testified he probably did not file such a motion because he did not believe it would result in any relief based on his evaluation of the facts and circumstances of the case and defendant's prior record.

¶ 31    Welch testified he had been an attorney for over 30 years, had handled more than 1,000 criminal cases, and had tried over 100 criminal cases.

¶ 32    With regard to defendant's complaint Welch did not file a motion to suppress, Welch testified defendant had no evidence taken from his person or near his person subject to a suppression motion. As for defendant's complaint Welch did not meet with him often enough, Welch testified he estimated he met with defendant two or three times at the jail and had brief conferences with defendant before various hearings on defendant's case. Welch testified he let defendant see the discovery material and defendant had ample opportunity to view the material, but supreme court rules prohibited him from giving defendant copies of the material.

¶ 33    As for his cross-examination of the State's confidential source, Welch did not specifically recall the cross-examination. However, he testified he questioned all the witnesses to the best of his ability.

¶ 34    After the State finished questioning Welch, the trial court asked Welch about defendant's complaint Welch allowed the case not to be tried within the 120-day limit for a speedy trial. Welch testified all requests for continuances were made in open court in defendant's

presence, and he believed defendant agreed to all of the continuances. According to Welch, defendant never objected to Welch about the continuances at the times they were made.

¶ 35    The trial court also asked Welch about defendant's allegations regarding Welch's cross-examination of the State's other witnesses. Welch responded he believed the witnesses were cross-examined sufficiently on the relevant points in this case. According to Welch, his choice as to what particular questions to ask the witnesses was strategic in nature.

¶ 36    The trial court next asked Welch about defendant's allegation Welch should have called expert witnesses on matters involving currency, voice recognition, and identification of controlled substances. Welch stated:

> "As far as other experts, I do not believe, again, strategically that given the nature of the charges, that there would have been any other relevant testimony to be gained from any expert witnesses. The voice recognition part, again, I think that that related to a conversation subsequent to the events in question and to me it wasn't really relevant to the issues that were in question whether or not a delivery had taken place."

¶ 37    With regard to defendant's argument Welch should have objected to the testimony of crime lab personnel that the substance delivered by defendant was cocaine, Welch testified he found the testing done at the state crime lab was adequate.

¶ 38    Finally, Welch told the trial court he had reviewed defendant's *pro se* motions filed on October 25 and November 23 prior to the hearing. The court asked Welch whether he had anything further to tell the court before it determined whether a full evidentiary hearing should be required. In response, Welch stated he had clearly informed Jolly about his options in this case and discussed these options with Jolly.

¶ 39    The trial court, in determining whether a full evidentiary hearing and appointment of new counsel were required, made the following statements. According to the court, what it "looks at is whether or not under the factual bases of the claims, whether or not those claims have or lack merit, whether or not they pertain to trial strategy, whether or not they relate to ineffective assistance of counsel, that being neglect, in particular, or failure to *** rise to the level *** of representation required under *Strickland v. Washington*." The court took judicial notice of the court file, and then said:

> "[T]he court can *** base it's [*sic*] evaluation of the defendant's *pro se* allegations on its own knowledge of defense counsel's performance at trial, and since I was the trial attorney [*sic*] and being familiar with Mr. Welch not only with respect to that particular case, but other cases in which he during that period of time that both of us were in the criminal felony division, would have had numerous encounters with one another, feel that I have a sufficient basis and knowledge to go ahead and draw upon that understanding, that perception, and that knowledge with respect to the competence of counsel."

The court then stated the defendant's allegations of ineffective assistance of counsel lacked merit and/or pertained to trial strategy. The court believed Welch never told Jolly he was not prepared to go to trial. In addition, the court believed Welch disclosed to defendant Welch's trial strategy in this matter. The court noted:

> "With respect to all of the other issues that were addressed, that being the forensic

experts, either calling them or not calling them, the method and means of cross-examination, the confidential source, the motions that could or may have been filed, whether it be motions to dismiss, for new trial, to suppress, the decision by counsel to object or not object to the introduction of certain exhibits to the jury, the decision to object or not object to any off-the-cuff statement that the state's attorney charged with prosecuting the case would have made, all relate to trial strategy decisions, not ineffective assistance of counsel."

The court then denied defendant's request for new counsel.

¶ 40 This appeal followed.

¶ 41          II. ANALYSIS

¶ 42 In the first appeal, we remanded this case to the trial court for the limited purpose of conducting an inquiry pursuant to *People v. Moore*, 207 Ill. 2d 68, 81, 797 N.E.2d 631, 639-40 (2003), into the underlying factual basis of defendant's *pro se* claims of ineffective assistance of counsel to determine if a full evidentiary hearing was required. *Jolly*, 2012 IL App (4th) 110033-U, ¶ 14. The court, on remand, conducted a hearing and determined a full evidentiary hearing was not required.

¶ 43 At issue is whether the trial court erred in the manner it conducted the hearing on remand. According to defendant's brief:

"[I]nstead of making a proper limited inquiry by discussing the claims with Jolly and [trial attorney] Welch, the court held a quasi-evidentiary hearing at which the State presented Welch's sworn testimony and then argued that Jolly should not be appointed counsel. At this hearing, the court used its personal knowledge of Welch's conduct in this case. The court denied Jolly's arguments on the merits rather than assessing them as to whether any of the arguments showed a colorable claim of possible neglect."

¶ 44 The proper scope of a preliminary investigatory hearing to determine whether to appoint defendant new counsel is a question of law we review *de novo*. *Moore*, 207 Ill. 2d at 75, 797 N.E.2d at 636. If the trial court erred in the manner it conducted the hearing, the error can be harmless beyond a reasonable doubt. *People v. Nitz*, 143 Ill. 2d 82, 135, 572 N.E.2d 895, 919 (1991).

¶ 45 Our supreme court has stated *Krankel* did not establish a *per se* rule a defendant is entitled to a new attorney every time he presents a *pro se* motion for a new trial alleging ineffective assistance of counsel. *People v. Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919. Instead, the trial court " 'should examine the factual matters underlying the defendant's claim[.] *** [I]f the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed ***.' " *Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919 (quoting *People v. Washington*, 184 Ill. App. 3d 703, 711, 540 N.E.2d 1014, 1019 (1989)); *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637. "A claim lacks merit if it is ' "conclusory, misleading, or legally immaterial" or do[es] "not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." ' " *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 22 (quoting *People v. Burks*, 343 Ill. App. 3d 765, 774, 799 N.E.2d 745, 753 (2003), quoting *People v. Johnson*, 159 Ill. 2d 97, 126 (1994)). However, if a defendant's factual allegations

" 'show possible neglect of the case *** new counsel [should] be appointed.' " *Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919 (quoting *Washington*, 184 Ill. App. 3d at 711, 540 N.E.2d at 1019).

¶ 46    In this type of case, when considering the trial court's review of a defendant's *pro se* allegations of ineffective assistance of counsel, our supreme court has held:

> "*The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's pro se allegations of ineffective assistance of counsel.* [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." (Emphasis added.) *Moore*, 207 Ill. 2d at 78-79, 797 N.E.2d at 638.

¶ 47    While a trial court should ordinarily conduct a preliminary investigation before proceeding to a full evidentiary hearing on the merits (*People v. Cabrales*, 325 Ill. App. 3d 1, 5, 756 N.E.2d 461, 464-65 (2001)), the supreme court has not addressed the specific question of the permissible extent of the preliminary investigatory hearing. This court, relying on *Moore*, previously has stated a trial court can conduct a *Krankel* inquiry in one or more of the following ways: "(1) questioning the trial counsel, (2) questioning the defendant, and (3) relying on its own knowledge of the trial counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d 326, 339, 833 N.E.2d 396, 407 (2005).

¶ 48    These investigatory hearings are meant to be neither adversarial nor evidentiary. It is not necessary to exclude trial counsel from the courtroom during the court's questioning of a defendant about allegations of ineffectiveness. Indeed, if trial counsel is present, he or she can hear for himself or herself what defendant is saying and then respond if called upon to do so by the court. Nor is it necessary to swear trial counsel or defendant. The preliminary investigation is meant to be informal; no one needs to be sworn to testify. Although the trial court repeatedly stated it was only holding a preliminary *Krankel* inquiry rather than an evidentiary hearing, defendant argues the court in essence conducted an evidentiary hearing. According to defendant:

> "Here, the court transcended the above boundaries of a limited preliminary inquiry by allowing the State to actively participate in the proceedings. The State was allowed to call Welch as a witness and to question him as to why he believed there was no merit to any of Jolly's claims of ineffectiveness. [Citation.] Although Welch was questioned by the State and the court, Jolly was not allowed to cross-examine Welch.
>
> In addition to presenting Welch's sworn testimony, the State was allowed to argue that Jolly should not receive appointed counsel. [Citation.] The State argued that no evidentiary hearing was necessary because 'Mr. Jolly has failed to show that Mr. Welch

-10-

was ineffective in his representation of Mr. Jolly[.]' [Citation.] Nothing in *Peacock* or *Moore* authorizes either the taking of actual testimony or active participation by the State during a preliminary inquiry."

¶ 49 The State argues the preliminary inquiry did not become an adversarial hearing on the merits simply because the State elicited some of Welch's responses to defendant's ineffectiveness claims. According to the State's brief:

"In contrast to *Cabrales*, the trial court recognized the purpose of the hearing–to determine the factual bases of defendant's allegations in order to decide whether it needed to appoint other counsel to present those claims in a full evidentiary hearing. Unlike *Cabrales*, the court did not allow the State to cross-examine defendant, or the defendant to cross-examine Welch, and it did not conduct a hearing on the merits. The State's role was *de minimis* and did not transform the hearing from the initial investigatory phase into an adversarial hearing on the merits."

¶ 50 We first note defendant reads this court's decision in *Peacock* too narrowly. As we noted earlier, our supreme court has stated a trial court " 'should examine the factual matters underlying the defendant's claim' " to determine whether a defendant's claims lack merit or pertain to matters of trial strategy. *Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919 (quoting *Washington*, 184 Ill. App. 3d at 711, 540 N.E.2d at 1019). Our decision in *Peacock* should not be read as restricting a trial court to only the three actions specifically enumerated in that case. For example, the court is free to review the court file and transcripts for purposes of the investigatory hearing. The court is also free to ask the State for specific and concrete factual information relating to a defendant's allegations.

¶ 51 That being said, the trial court in the case *sub judice* erred by allowing the State to question defendant's trial counsel under oath during the preliminary investigatory hearing while barring defendant from asking his trial counsel any questions, and more importantly, at a time when defendant's counsel was not present. The moment the State was allowed to question defense counsel, this hearing turned from investigatory to adversarial. The same would have been true if the court allowed defendant to question his trial counsel.

¶ 52 When the trial court questions the parties, it does so, not as an advocate, but as an impartial tribunal whose only mission is to get the facts and follow the law. As a result, the court can make an impartial determination whether a defendant's claims of ineffectiveness are so without merit or relate to matters of strategy such that appointment of new counsel is unwarranted.

¶ 53 The trial court also erred in relying on its knowledge of defense counsel's performance in cases other than this matter. Even the best attorney can render legally ineffective assistance by making significant mistakes. After all, contrary to some beliefs, attorneys are only human, and humans make mistakes. As a result, with regard to an attorney's performance, the trial court must only take into consideration the attorney's performance in the particular case at issue. See *Peacock*, 359 Ill. App. 3d at 339, 833 N.E.2d at 407.

¶ 54 Here the State, represented by counsel, conducted a sworn examination of Welch. Defendant, unrepresented at this time, was not allowed to ask any questions of Welch. Although the trial court erred in the manner it conducted the hearing, we can still affirm the

trial court if its error was harmless beyond a reasonable doubt. *Nitz*, 143 Ill. 2d at 135, 572 N.E.2d at 919.

¶ 55    In *Nitz*, the trial court allowed defendant's trial counsel to conduct the examination of the witnesses whom defendant tendered as able to show defendant's trial counsel had been ineffective. The supreme court found this procedure to be error because of the clear conflict in having trial counsel examine witnesses who might prove counsel to have been ineffective. The supreme court found this error to be harmless beyond a reasonable doubt.

¶ 56    In this case, the trial court's procedural errors were harmless beyond a reasonable doubt. We first note the trial court thoroughly examined the factual matters in this case, questioning both defendant and attorney Welch in a fair and impartial manner. The court could have easily denied defendant's request for new counsel based on its own investigation of the facts in open court.

¶ 57    Defendant only argues two of his allegations of ineffective assistance of counsel show a colorable claim of possible neglect. However, neither states a colorable claim of possible neglect.

¶ 58    Defendant first argues Welch was ineffective because he did not impeach Gunn, the State's confidential source, by questioning him about his drug use. According to defendant, "Welch did not ask Gunn, the State's primary witness in this case, whether he was high at trial or during the alleged delivery, or when Gunn had last used illegal drugs." How an attorney chooses to cross-examine a witness is a matter of trial strategy. Further, based on the facts of this case, this claim is meritless. Gunn made a controlled drug buy from defendant while under police surveillance. Gunn was searched prior to making the controlled buy and had no drugs. After the controlled buy, Gunn possessed drugs he received from defendant. Further, police recovered the currency used to make the controlled buy after defendant threw it from his car while being pursued by police officers. Gunn's personal flaws would have had no impact on the State's case against defendant. Moreover, the State introduced evidence of Gunn's criminal and drug history, including the facts he had convictions for delivery of a controlled substance and had served time in prison. Gunn even testified he sold drugs, stole things, and did whatever else was necessary to acquire drugs.

¶ 59    Defendant next argues Welch did not disclose or discuss his trial strategy with him, and Welch's answers regarding this allegation were not responsive to defendant's claim. Defendant cites no authority to support his position defense counsel's failure to discuss trial strategy presents a colorable claim of neglect. Moreover, defendant does not even contend he asked Welch to discuss trial strategy with him. Additionally, as Welch testified, this was a "cut and dry" case for the State.

¶ 60    Further, defendant does not identify any strategy Welch could have used at trial other than impeaching Gunn with his drug use. As stated earlier, defendant's claim Welch was ineffective based on his cross-examination of Gunn is meritless based on the facts of this case.

¶ 61    Counsel for defendant filed a petition for rehearing following the issuance of our decision in this case, bringing to our attention a recent decision of the Second District. Just seven days prior to the filing of our decision, the Second District issued its opinion in *People v. Fields*,

2013 IL App (2d) 120945.

¶ 62    As in the case *sub judice*, the *Fields* court found error in the way the trial court conducted its *Krankel* inquiry. While noting the method of inquiry at a *Krankel* hearing is somewhat flexible and the State may be asked to offer concrete and easily verifiable *facts* at the hearing, the *Fields* court found no case law to suggest the State should be an active participant during the preliminary inquiry. This comports with our decision here. "If the State's participation during the initial investigation into a defendant's *pro se* allegations is anything more than *de minimus*, there is a risk that the preliminary inquiry will be turned into an adversarial proceeding, with both the State and trial counsel opposing the defendant." *Id.* ¶ 40. We agree.

¶ 63    In *Fields*, the appellate court remanded for a preliminary *Krankel* inquiry before a different judge and without adversarial State participation. We decline to go so far based on the facts of this case. Our discussion above demonstrates neither of defendant's allegations amount to a colorable claim of ineffective assistance of counsel. Moreover, as we noted, the trial court's own inquiry, without input from the State, elicited sufficient information to show defendant's claims were not colorable.

¶ 64    For the reasons stated above, the trial court's procedural error was harmless beyond a reasonable doubt.

¶ 65                                III. CONCLUSION

¶ 66    For the reasons stated, we affirm the trial court's denial of defendant's request for new counsel. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 67    Affirmed.

-13-